Helen **TANNEHILL**, By Terri **PODGOR-SKI**, Personal Representative of Her Estate, Appellant–Plaintiff,

v.

Shailaja R. **REDDY**, Appellee–Defendant.

No. 49A02–9308–CV–451.

Court of Appeals of Indiana, First District.

April 28, 1994.

Rehearing Denied June 23, 1994.

trial court granted summary judgment after it had struck two affidavits which Tannehill had submitted to show that Dr. Reddy had not performed under the applicable standard of care. Tannehill claims that the trial court erroneously struck the affidavits and that the affidavits establish a genuine issue of material fact. We affirm.

After Tannehill had filed her proposed complaint for medical negligence with the Indiana Department of Insurance, the medical review panel rendered a unanimous expert opinion that the evidence did not support the conclusion that Dr. Reddy had failed to meet the appropriate standard of care as charged in the proposed complaint. Tannehill eventually filed her complaint with the trial court; and, on September 15, 1992, Dr. Reddy moved for summary judgment premised upon the opinion of the medical review panel as verified by affidavit of the panel chairman. The trial court set the matter to be heard on November 24, 1992.

On October 19, 1992, Tannehill requested and obtained an enlargement of time, to November 15, 1992, within which to file her response and affidavits to the motion for summary judgment. On November 16, 1992, Tannehill filed an "affidavit" of Dr. Stephen Seagren (Affidavit 1), which had been signed by Dr. Seagren but which contained no verification or notarization. The "affidavit" calls itself an affidavit and states:

> Comes now Stephen L. Seagren, M.D., and for his affidavit says:
>
> *  *  *  *  *  *
>
> And further, your affiant sayeth naught,
> /s/
> Stephen L. Seagren, M.D.

An unexecuted jurat follows these statements. A jurat is a symbol which certifies the administration of an oath; it is not part of the affidavit but is merely evidence that the oath has been taken. *Yang v. Stafford* (1987), 515 N.E.2d 1157, 1159 n. 2, 1160, *trans. denied.*

Also on November 16, 1992, Tannehill requested two enlargements of time. The first request was for an enlargement of time, to November 17, 1992, within which to file her responsive memorandum to the motion for

Gordon B. Dempsey, P.C., Indianapolis, for appellant.

Jill L. McCrory, Richard L. Fairchild, Stewart & Irwin, Indianapolis, for appellee.

ROBERTSON, Judge.

Helen Tannehill, by Terri Podgorski, personal representative of her estate (Tannehill), appeals from summary judgment granted to Shailaja R. Reddy, M.D., in Tannehill's medical malpractice suit against Dr. Reddy. The

summary judgment. Tannehill, in fact, filed her response on November 17, 1992; and the trial court subsequently granted the request to do so on November 24, 1992. Tannehill also must have recognized a defect in Affidavit 1 because her second request of November 16, 1992, asked for an enlargement of time, to the November 24, 1992, hearing date, within which to file an "identical notarized original" of the previously filed "affidavit." On November 24, 1992, the trial court allowed Tannehill until that same date, November 24, 1992, to file the "original notarized copy" of the November 16, 1992, "affidavit" (Affidavit 1). The hearing on the motion for summary judgment was moved to March 8, 1993.

Tannehill, however, did not file an "identical notarized original" or an "original notarized copy" but, on November 23, 1992, filed a motion for leave to file a "Second Affidavit" of Dr. Seagren (Affidavit 2). The record does not show that the trial court granted any such motion or that Tannehill sought an enlargement of time to file a second affidavit. Tannehill had served on Dr. Reddy a signed and notarized copy of Affidavit 2 on November 24, 1992, and again on March 4, 1993, but did not file a signed and notarized copy of the second affidavit with the trial court until March 5, 1993. Tannehill now refers to this second affidavit as an "unsigned *modified* version of [Affidavit 1], which made no changes in the facts alleged but used different language in two opinion paragraphs, to foreclose a possible rhetorical argument."

Dr. Reddy moved to strike the affidavits. The trial court granted the motion and, left with no affidavit from Tannehill on the standard of care, granted Dr. Reddy's motion for summary judgment. *See, e.g., Hoskins v. Sharp* (1994), Ind.App., 629 N.E.2d 1271.

### AFFIDAVIT 2

■ Dr. Reddy claims that Affidavit 2 was properly struck because Tannehill had not filed it in a timely manner. We conclude that the trial court committed no error.

Dr. Reddy filed her motion for summary judgment on September 15, 1992. Tannehill had thirty (30) days after the service of the motion to serve a response and any opposing affidavits. T.R. 56(C). The response was due on October 19, 1992.

Tannehill, however, filed her motion for leave to file a "Second Affidavit" on November 23, 1992. Although a signed and verified copy of the "Second Affidavit" was served on Dr. Reddy by November 24, 1992, which was the day of the hearing, Tannehill had only thirty (30) days after the service of the motion for summary judgment, that is, until October 19, 1992, to serve her opposing affidavits. She did not serve Affidavit 2 within the time contemplated by T.R. 56(C), and the trial court therefore properly determined that it was untimely. *See Larr v. Wolf* (1983), Ind.App., 451 N.E.2d 664 (at the time, T.R. 56 stated that the adverse party prior to the day of hearing may serve opposing affidavits; and, where the affidavit was tendered on the day of the hearing, the trial court properly denied the filing as being untimely).

■ Further, even if we were to consider Affidavit 2 to be a supplement to Affidavit 1 permitted by T.R. 56(E), the decision to grant permission to file such a supplement is a matter of discretion with the trial court. *Winbush v. Memorial Health System, Inc.* (1991), Ind., 581 N.E.2d 1239, 1243. Tannehill had ample opportunity to have timely filed her affidavit and, in fact, obtained an enlargement of time to do so. We decline to reverse for abuse of discretion.

### AFFIDAVIT 1

Dr. Reddy claims that the trial court properly struck Affidavit 1 because, although Dr. Seagren had signed the "affidavit," it had been neither verified by Dr. Seagren nor shown to have been notarized. We agree.

Trial Rule 11 provides one method for binding an affiant to his oath. *Jordan v. Deery* (1993), Ind., 609 N.E.2d 1104, 1110. In pertinent part, the rule provides:

**(B) Verification by Affirmation or Representation.** When in connection with any civil or special statutory proceeding it is required that any pleading, motion, petition, supporting affidavit, or other document of any kind, be verified, or that an oath be taken, it shall be sufficient if the subscriber simply affirms the truth of the

matter to be verified by an affirmation or representation in substantially the following language:

"I (we) affirm, under the penalties for perjury, that the foregoing representation(s) is (are) true.

(Signed) _____ "

Any person who falsifies an affirmation or representation of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit.

Compliance with the provisions of T.R. 11 is not, however, required. *Jordan,* 609 N.E.2d at 1110. Trial rule 56 permits the trial court to rely on "affidavits" filed in connection with a summary judgment proceeding. *Id.* An affidavit has been defined as a written statement of fact which is sworn to as the truth before an authorized officer. *Id.*

■ The chief test of the sufficiency of an affidavit is its ability to serve as a predicate for a perjury prosecution. *Jordan,* 609 N.E.2d at 1110. The portion of the perjury statute applicable to an affidavit (not before a court or grand jury) is as follows:

A person who:

(1) makes a false, material statement under oath or affirmation, knowing the statement to be false or not believing it to be true;

\*   \*   \*   \*   \*   \*

commits perjury, a Class D felony.

Ind.Code 35-44-2-1(a).

There is a distinction, however, between types of affidavits. There are those which serve as evidence and which advise the court as it decides preliminary issues or determines substantial rights where evidence is not in conflict; in the alternative there are those which merely serve to invoke judicial power. The latter are not evidential in any sense but rather are pledges of good faith in the commencement of suits. *Lincoln National Bank v. Mundinger* (1988), Ind.App., 528 N.E.2d 829, 833-834.

■ In the determination about whether a genuine issue of material fact is present, the trial court faced with a motion for summary judgment is necessarily concerned about matters which may serve as evidence, that is, matters which may be taken as true if the case goes to trial. *See generally, Holloway v. Giganti, Inc.* (1989), Ind.App., 540 N.E.2d 97, 98-99 (for summary judgment purposes, documents attached to answers to interrogatories and to the respective motions and response, which are not sworn statements, certified copies, or verified by affidavit, do not qualify for consideration). Affidavits used for summary judgment purposes do not serve merely to invoke judicial power and are not merely pledges of good faith but are evidential in nature. *See, e.g., Lee v. Schroeder* (1988), Ind.App., 529 N.E.2d 349, 352, *trans. denied* (a court should disregard any inadmissible information contained in an affidavit [used for summary judgment purposes] ); *Yang,* 515 N.E.2d at 1162 (under T.R. 56(E), it is not necessary that the facts presented by affidavit be sufficient to support a verdict; rather, they need only be admissible as evidence). Therefore, the affidavits used in conjunction with summary judgment determinations should be subject to the penalties for perjury. Also, when a "subscriber simply affirms the truth of the matter to be verified by an affirmation or representation" and the verification is used in conjunction with a summary judgment determination, that verification, in the words of T.R. 11(B), should "be subject to the same penalties as are prescribed by law for the making of a false affidavit."

■ Affidavit 1 does not show that it is a written statement of fact "which is sworn to as the truth before an authorized officer." The so-called affidavit contains an unexecuted jurat. In her motion for leave to file a "Second Affidavit," Tannehill referred to Affidavit 1 as "a signed but not yet notarized affidavit." Further, the affidavit does not purport to have been sworn to before an authorized officer. Also, Tannehill has identified no other evidence in the record to show that the affidavit was, in fact, duly sworn before an authorized officer. Thus, Affidavit 1 does not show that it contains a "statement under oath," as required by the applicable portion of the perjury statute, and would not subject the subscriber to the penalties for perjury. Affidavit 1 is, therefore, not an

affidavit. *Accord Cantwell v. State* (1867), 27 Ind. 505 (paper intended as an affidavit did not appear to have been sworn to; it was no affidavit).

Further, Affidavit 1 does not contain a statement which affirms the truth of the matter to be verified. The "affidavit" does not contain an affirmation in substantially the same language as T.R. 11(B), which states that the person affirms, under the penalties for perjury, that the representations made are true. *See Mechanics Laundry & Supply v. Wilder Oil* (1992), Ind.App., 596 N.E.2d 248, 254, trans. denied. *Accord Jordan,* 609 N.E.2d at 1109–1110 (statement that "Affiant . . . being duly sworn upon her oath alleges and says . . ." was sufficient to subject the affiant to prosecution for making a false affidavit and, therefore, constituted an affidavit); *Hoskins,* 629 N.E.2d at 1277–78 (words, "I affirm the truth of the above statements" were sufficient to subject the subscriber to a perjury prosecution); *Board of Dental Examiners v. Judd* (1990), Ind.App., 554 N.E.2d 829, 831–832 (statement, "Comes now [affiant] and being duly sworn upon his oath, alleges and says . . ." was sufficient to subject the affiant to the penalties for perjury). As a result, Affidavit 1 does not contain a "statement under affirmation," as required by the above portion of the perjury statute, and would not subject the subscriber to the same penalties as are prescribed by law for the making of a false affidavit. Affidavit 1 is, therefore, not a verification by affirmation.

We further note that T.R. 11(B) allows a subscriber simply to affirm the truth of the matter to be verified by a "representation" and that any person who falsifies a "representation" of fact shall be subject to the same penalties as are prescribed by law for the making of a false affidavit. The perjury statute, however, does not mention "representation," but only false, material statements made under oath or affirmation. I.C. 35–44–2–1(a). The trial rule nevertheless states that the subscriber may "simply *affirm* [. . .] by . . . representation . . ." (our emphasis). An affirmation, therefore, is the keystone of the verification under T.R. 11(B) as it relates to a perjury prosecution under

I.C. 35–44–2–1(a). As noted above, Affidavit 1 contains no such affirmation.

Affidavit 1 does not contain a statement under oath or affirmation as contemplated by I.C. 35–44–2–1(a). The "affidavit" therefore would not serve as a predicate for a perjury prosecution and is neither an affidavit under T.R. 56(E) nor a verification by affirmation or representation under T.R. 11(B). The terms "affidavit" and "affiant" used in Affidavit 1 are nothing more than conclusions. In light of this, the trial court committed no error when it granted the motion to strike the affidavit.

Judgment affirmed.

BAKER and NAJAM, JJ., concur.