**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Nov 06 2014, 8:59 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**RONALD J. WAICUKAUSKI**
**CAROL NEMETH JOVEN**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
POWERS-RUETH & ASSOCIATES,
DONALD S. POWERS, MARGARET
F. POWERS, FRANKIE L. FESKO,
and TIMOTHY FESKO:

**DAVID C. JENSEN**
**NICHOLAS G. BRUNETTE**
Eichhorn & Eichhorn, LLP
Hammond, Indiana

ATTORNEYS FOR APPELLEE
JOE WILLIAMSON:

**JOHN P. REED**
**JONATHAN HALM**
Abrahamson, Reed & Bilse
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

RUETH DEVELOPMENT COMPANY, an )
Indiana Limited Partnership, )
    )
    Appellant-Plaintiff, )
    )
    vs.     )    No. 45A05-1402-PL-80
    )
POWERS-RUETH & ASSOCIATES, DONALD )
S. POWERS, MARGARET F. POWERS, )
FRANKIE L. FESKO, TIMOTHY FESKO, and )
JOE P. WILLIAMSON, )
    )
    Appellees-Defendants. )

APPEAL FROM THE LAKE COUNTY SUPERIOR COURT
The Honorable Calvin D. Hawkins, Judge
Cause No. 45D02-1210-PL-25

**November 6, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On December 1, 1976, Donald S. Powers ("Powers") and Rueth Development Company ("RDC") formed Powers-Rueth and Associates ("PRA") for the purpose of acquiring and developing real estate. PRA was initially created as a general partnership with both Powers and RDC serving as general partners. In 1981, PRA formed the Briar Ridge Country Club (the "BRCC"). The BRCC was wholly owned by PRA. On September 20, 1994, Powers was named the sole general partner of PRA. RDC remained a limited partner of PRA.

On April 30, 2011, PRA entered into an agreement to sell the BRCC to a group of individuals who were collectively known as the Preservation Committee, LLC (the "Preservation Committee"). On July 5, 2011, RDC filed a complaint for declaratory and injunctive relief from PRA, seeking to enjoin the sale of the BRCC to the Preservation Committee. That same day, the trial court granted a temporary restraining order preventing the sale of the BRCC pending a hearing on RDC's motion to enjoin the sale. The trial court subsequently dissolved the temporary restraining order and denied RDC's motion to enjoin the sale of the BRCC. RDC has since made numerous attempts to block the sale of the

BRCC to the Preservation Committee and to expand the scope of the underlying lawsuit to include numerous claims against numerous defendants who were allegedly connected to the sale of the BRCC in some way.

On May 3, 2013, Appellees-Defendants PRA, Powers, Margaret F. Powers ("Margaret"), Frankie L. Fesko ("Frankie"), Timothy Fesko ("Timothy"), and Joe Williamson ("Williamson") (collectively, "the Appellees") filed motions for summary judgment on the claims levied against them by RDC. RDC appeals following the trial court's denial of RDC's request to file a successive amended complaint, denial of RDC's request to file supplemental designated evidence, and award of summary judgment in favor of the Appellees.

RDC contends that the trial court abused its discretion in denying its request for leave to file a successive amended complaint and in denying its request to submit supplemental designated evidence. RDC also contends that the trial court erred in granting summary judgment in favor of the Appellees. Upon review, we conclude that the trial court did not abuse its discretion in denying RDC's request for leave to file a successive amended complaint or to submit supplemental designated evidence. We further conclude that the trial court did not err in granting summary judgment in favor of the Appellees. As such, we affirm.

**FACTS AND PROCEDURAL HISTORY**

*Overview of the Parties*

Powers is married to Margaret. Powers and Margaret are the parents of Frankie.

3

Margaret and Frankie are limited partners in PRA. Frankie is married to Timothy. Timothy is not a member of any board relating to the BRCC, does not hold any offices in relation to the BRCC, and has no ownership interest in PRA. During the time relevant to this appeal, Williamson was an officer and director of Briar Ridge Country Club, Inc. ("BRCC, Inc."), which is an Indiana Corporation that was formed to operate the facilities of the BRCC. Williamson was not a shareholder in BRCC, Inc., which was wholly owned by PRA.

*Relevant Facts*

On December 1, 1976, Powers and RDC, as general partners, formed PRA for the purpose of acquiring and developing real estate. PRA is an Indiana Limited Partnership with its principal place of business in Munster, Indiana. On September 20, 1994, pursuant to the Eighth Amendment of the PRA Limited Partnership Agreement (the "PRA LPA"), Powers was designated as the sole general partner of PRA after the partners that made up RDC filed a petition to dissolve RDC. RDC remained a limited partner of PRA.

In 1981, PRA formed the BRCC. The BRCC was wholly owned by PRA. On April 30, 2011, Powers, as sole general partner of PRA, signed a letter of intent to sell the BRCC to a group known as the Preservation Committee for a sum of three million dollars. The Preservation Committee was made up of residents of the Briar Ridge sub-division and members of the BRCC. The sale of the BRCC closed on October 24, 2011.

*Procedural History*

On July 5, 2011, RDC filed a complaint for declaratory and injunctive relief against PRA to stop the sale of the BRCC to the Preservation Committee. The complaint also sought

compensatory and punitive damages from Powers. Margaret and Frankie were also joined as defendants to the lawsuit. Also on July 5, 2011, RDC obtained a temporary restraining order preventing the sale of the BRCC. The trial court conducted a hearing on RDC's request for a preliminary injunction on July 15, 2011. Five days later, on July 20, 2011, the trial court denied RDC's motion to enjoin the sale of the BRCC and dissolved the temporary restraining order.

On August 2, 2011, RDC filed its second amended complaint against Powers and PRA. Count I of the second amended complaint requested a declaratory judgment that the letter of intent and a purchase agreement to sell the BRCC, which were executed by Powers on behalf of PRA, were void. Count II alleged that Powers breached the PRA LPA by entering into an agreement to sell the BRCC. Count III alleged that Powers breached his fiduciary duty to RDC by executing the letter of intent and/or the purchase agreement for the sale of the BRCC. Count IV alleged that PRA limited partners Margaret and Frankie breached their respective fiduciary duties to RDC. Timothy and Williamson were also joined in Count IV.

On August 26, 2011, PRA and Powers filed a motion for judgment on the pleadings. RDC filed a response in opposition to the motion for judgment on the pleadings on September 26, 2011. On September 30, 2011, RDC filed an emergency verified motion for a temporary restraining order, in which it again sought to enjoin the sale of the BRCC. The trial court denied RDC's emergency motion on October 3, 2011.

On January 19, 2012, RDC moved for leave to file a successive amended complaint.

5

The Appellees collectively filed a response in opposition to RDC's request on February 7, 2012. On February 8, 2012, the trial court granted Powers and PRA's motion for judgment on the pleadings as to Counts I and II of RDC's second amended complaint. On February 24, 2012, the trial court denied RDC's January 19, 2012 request for leave to file a successive amended complaint.

On April 18, 2013, RDC again moved for leave to file a successive amended complaint. RDC sought to add ten new counts, eleven new individual defendants, and four new entity defendants in this successive amended complaint. On May 3, 2012, the Appellees filed their response in opposition to RDC's April 18, 2013 request for leave to file a successive amended complaint. The trial court denied RDC's April 18, 2013 request to file a successive amended compliant on June 18, 2013.

On October 11, 2013, the Appellees filed motions for summary judgment, designations of evidence, and statements of undisputed facts. RDC filed a consolidated response in opposition to the Appellees' motions for summary judgment on November 13, 2013. On December 2, 2013, the Appellees filed their respective replies in support of their motions for summary judgment. Also on December 2, 2013, the Appellees filed motions to strike certain evidence designated by RDC. On December 17, 2013, RDC filed its response to the Appellees' motions to strike and sought permission to file a supplemental designation of evidence. On December 26, 2013, the trial court conducted a hearing on the pending motions after which it denied RDC's request for file a supplemental designation of evidence, granted the Appellees' motions to strike RDC's designations of evidence, and granted the

6

Appellees' motions for summary judgment.

On January 29, 2014, RDC filed a motion to correct error. The Appellees filed a statement in opposition to RDC's motion to correct error on February 6, 2014. On February 11, 2014, the trial court denied RDC's motion to correct error.[1]

## DISCUSSION AND DECISION

RDC contends that the trial court abused its discretion in denying its motion for leave to amend its complaint and its request to submit supplemental evidence prior to the summary judgment hearing. RDC also contends that the award of summary judgment in favor of the Appellees was improper because issues of material fact remain which would preclude an award of summary judgment. For their parts, the Appellees contend that the trial court acted within its discretion in denying RDC's request to file a successive amended complaint and supplemental designated materials. The Appellees also contend that the trial court properly granted summary judgment in their favor.

### I. Whether the Trial Court Abused Its Discretion in Denying RDC's Request to File a Successive Amended Complaint

### A. Standard of Review

Indiana courts have long held that a plaintiff does not have "an absolute right to file a supplemental complaint." *Carr v. Besse*, 82 Ind. App. 124, 126, 143 N.E. 639, 640 (1924).

> A party may amend his pleading once as a matter of right any time before a responsive pleading is served. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." T.R. 15. The grant or denial of leave to amend a complaint is a matter of the sound discretion of the trial court and

---

[1] We note that in addition to the outlined procedural history, throughout the course of litigation, the parties have also filed multiple motions for a change of judge and to extend pre-trial deadlines.

7

is reviewable only for an abuse of discretion. *Hoosier Plastics v. Westfield Savings and Loan* (1982), Ind. App., 433 N.E.2d 24.

*Johnson v. Patterson*, 570 N.E.2d 93, 99 (Ind. Ct. App. 1991).

"'Discretion' implies flexibility in light of varying circumstances." *B & D Corp. v. Anderson, Clayton & Co.*, 180 Ind. App. 115, 124, 387 N.E.2d 476, 482 (1979) (internal quotation omitted). "Discretion is afforded a trial court to act in accord with what is fair and equitable in each case." *Templin v. Fobes*, 617 N.E.2d 541, 543 (Ind. 1993).

> An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or if the trial court has misinterpreted the law. [*McCullough v. Archbold Ladder Co.*, 605 N.E.2d 175, 180 (Ind. 1993)]. "An abuse of discretion is an erroneous conclusion in judgment when clearly against the logic and effect of the facts or the reasonable, probable deductions to be drawn therefrom." *Boles v. Weidner* (1983), Ind., 449 N.E.2d 288, 291.

*Id.* The substance of the abuse of discretion analysis concerning proposed amendments is an evaluation of a number of factors. *Palacios v. Kline*, 566 N.E.2d 573, 575 (Ind. Ct. App. 1991). These include, but are not limited to, "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* (citing *Selvia v. Reitmeyer*, 156 Ind. App. 203, 207, 295 N.E.2d 869, 872 (Ind. Ct. App. 1973)).

## B. Analysis

RDC contends that the trial court abused its discretion in denying its request for leave to file a successive amended complaint. For their parts, the Appellees claim that the trial court did not abuse its discretion in this regard.

8

## 1. Discussion of Relevant Prior Appellate Decisions

In *Templin*, 617 N.E.2d at 542, the Templins filed a complaint against Fobes alleging negligence on August 28, 1989. They sought permission to file an amended complaint on February 1, 1991, in which they attempted to add an additional defendant. *Id*. The trial court denied the Templins' request, and the case was tried before a jury in July of 1991. *Id*. at 542-43. On appeal, the Indiana Supreme Court held that the trial court did not abuse its discretion in denying the Templins' request to file an amended complaint. *Id*. at 543. In reaching this holding, the Indiana Supreme Court stated that because trial was five months away at the time the Templins sought to add a new party on a new theory, the filing of the proposed amended complaint would have resulted in unfair delay and additional expense to Fobes. *Id*.

In *Kreilein v. Common Council of the City of Jasper*, 980 N.E.2d 352, 355 (Ind. Ct. App. 2012), HDC, a community group made up of concerned citizens who opposed a proposed power plant conversion in the City of Jasper (the "City"), filed an action against the City on August 4, 2011. The action sought a declaratory judgment on the issue of whether the City had violated Indiana's Open Door Law by failing to give HDC adequate notice of a hearing during which the City's Council and Utility Board intended to vote on approval of a lease agreement which HDC opposed. *Id*. HDC subsequently moved to amend its complaint. On November 21, 2011, HDC sought leave to file a second amended complaint, in which it sought to add an additional count to its complaint against the City. *Id*. at 356. On December 7, 2011, the trial court granted in part and denied in part HDC's request to file a second amended complaint. *Id*.

9

On appeal, we concluded that the trial court abused its discretion in partially denying HDC's request to file a second amended complaint. *Id*. at 360. In coming to this conclusion, we noted that HDC based its complaint upon alleged violations of the Open Door Law and, in making its request to file a second amended complaint, argued that information learned during discovery suggested that a volunteer group may have been formed by the City in an attempt to circumvent the Open Door Law. *Id*. at 360. We further noted that HDC made numerous efforts to timely obtain discovery in the course of the underlying expedited proceedings, but those efforts were thwarted time and time again by the City's refusal to cooperate. *Id*. at 359. As a result, any prejudice allegedly suffered by the City in allowing HDC to file a second amended complaint was a direct result of the City's refusal to conduct discovery in a timely fashion. *Id*. at 360.

In *Hillard v. Jacobs*, 927 N.E.2d 393, 396 (Ind. Ct. App. 2010), the original complaint was filed in January of 2003. Hillard filed a motion for leave to file a third amended complaint in April of 2006, in which Hillard attempted to raise new claims against Jacobs. *Id*. at 397. The trial court denied Hillard's request to file the third amended complaint. *Id*. On appeal, we concluded that the trial court did not abuse its discretion in denying Hillard's request to file the third amended complaint. *Id*. at 401. In coming to this conclusion, we noted Hillard's undue delay in raising the claims contained in the third amended complaint and the prejudice that would result to Jacobs if the new claims, all of which were known at the time the original complaint was filed, were allowed to be filed three years after the original complaint was filed. *Id*.

10

In *Gordon v. Purdue University*, 862 N.E.2d 1244, 1245 (Ind. Ct. App. 2007), Gordon filed a suit against Purdue University in July of 2004, alleging breach of contract, negligence, and defamation. With respect to Gordon's negligence and defamation claims, the trial court granted Purdue's motion for judgment on the pleadings. *Id*. at 1247. With respect to the breach of contract claim, Gordon filed an amended complaint to allege a bad faith breach of contract following a partial award of summary judgment in favor of Purdue. *Id*. at 1248. Gordon subsequently requested leave to file a second amended complaint. *Id*. at 1249. The trial court denied Gordon's request. *Id*. Upon review, we concluded that the trial court acted within its discretion in denying Gordon's request for leave to file a second amended complaint because the second amended complaint "again raised issues that had been previously resolved in the summary judgment motion." *Id*. at 1253.

In *General Motors Corp. v. Northrop Corp.*, 685 N.E.2d 127, 132 (Ind. Ct. App. 1997), the underlying lawsuit was initiated by Allison Engine Company in 1991. On September 29, 1995, "over four years after Allison filed its initial complaint and nearly two years after Allison filed its first amended complaint, Allison moved for leave to file a second amended complaint." *Id*. at 141. The second amended complaint sought to add two counts, one count of fraud and one count of constructive fraud. *Id*. The trial court denied Allison's request on February 1, 1996, finding that there was no justification for Allison's delay in adding the additional claims, that Northrop would be prejudiced by the delay, and that allowing Allison to amend the complaint would be futile. *Id*. at 141-42. The trial court also noted that Allison did not assert that it had discovered new evidence which might justify its

11

delay. *Id*. at 142. Upon review, we concluded that the trial court acted within its discretion in denying Allison's request to file a second amended complaint. *Id*.

In *B & D Corp.*, 180 Ind. App. at 117, 387 N.E.2d at 478, the plaintiff filed an amended complaint in June of 1972. The plaintiff subsequently sought leave to file a Second amended complaint, in which it sought to add allegations to those raised in the first amended complaint. *Id*. at 120-21, 387 N.E.2d at 480. On June 17, 1976, the trial court denied the plaintiff's request for leave to file the second amended complaint. *Id*. at 121-22, 387 N.E.2d at 480. On appeal, we concluded that the trial court acted within its discretion in denying the plaintiff's request for leave to file the second amended complaint, noting that:

> [i]n our opinion, a reading of the sought-after amendment shows that the certain impact of granting the motion would have been to confound already complicated and protracted litigation with the injection of an essentially wholly new claim with potentially far-reaching consequences in terms of the factual context of the litigation and the relationships between and among parties in the action. Such consideration alone is sufficient to sustain the discretionary ruling by the trial court. We further believe Corn Farmers' statement that "(t)he issues to be tried remain basically the same and the second amended complaint merely facilitates the fair trial of existing issues between the parties" to be an oversimplification of the problems.

*Id*. at 124, 387 N.E.2d at 482.

### 2. Application of the Relevant Authority to the Facts Presented in the Instant Matter

RDC filed its original complaint against PRA and Powers on July 5, 2011. On July 11, 2011, RDC filed an amended complaint in which it added at least one additional defendant.[2] On August 2, 2011, RDC filed a second amended complaint for injunctive and other relief. The second amended complaint expanded upon the previously pled claims and

12

added additional defendants.

On January 19, 2012, RDC filed a request for leave to file a successive amended complaint. In making this request, RDC sought to add a number of additional defendants and expand upon its previously alleged claims. On February 24, 2012, the trial court denied RDC's request to file the successive amended complaint. RDC did not appeal this denial.

Approximately fourteen months later, on April 18, 2013, RDC filed another request for leave to file a successive amended complaint. The April 18, 2013 request sought (1) to add numerous additional defendants; (2) to address the issues identified by the trial court in its February 8, 2012 order granting judgment on the pleadings as to Counts I and II, and to re-allege these counts; and (3) to add additional allegations of gross negligence, intentional interference with a contract, unjust enrichment, and conspiracy. The Appellees responded in opposition to RDC's request on May 3, 2013, claiming that RDC's request was "yet another attempt by RDC to prolong worthless litigation as it tries to embroil an ever-expanding number of defendants in its web – this time by a proposed complaint containing ten (10) counts, 187 pleading paragraphs, which is directed to sixteen (16) new defendants, plus ten (10) entities and individuals who are already defendants." Appellees' App. pp. 266-67 (footnotes omitted).

The Appellees argued that the filing of the proposed, largely expanded, successive amended complaint (1) would result in undue delay of the matter, (2) would result in prejudice to the Appellees, and (3) demonstrated dilatory tactics by RDC. In support, the Appellees noted that the April 18, 2013 request was filed approximately fourteen months

---

[2] No copy of the amended complaint is included in the record on appeal.

after RDC's prior request to file a successive amended complaint was denied. With respect to Counts I and II, the Appellees noted that the trial court granted RDC ten days after its February 8, 2012 order to re-plead the counts, but RDC failed to do so. The Appellees also noted RDC attempted to file the successive amended complaint approximately three to four months before discovery was scheduled to end in August of 2013 and approximately five to six months before trial, which was set for November of 2013. The Appellees stated that they had "already spent a great deal of time and money defending against RDC's multiple, unsuccessful attempts to prevent the sale of [the] BRCC" and in defending against the pending lawsuit, Appellees' App. p. 278, and claimed that because the proposed successive amended complaint would serve to complicate and expand the litigation they would undoubtedly suffer additional financial burden. The Appellees also claimed that the proposed successive complaint contained an irrelevant and inaccurate history of RDC's involvement with PRA.

RDC did not assert that the additional claims it sought to add could not have been discovered when it filed its original complaint. RDC attempts to justify its delay in requesting leave to file the proposed successive amended complaint by stating that "[u]nder the pressures of moving quickly to obtain a [temporary restraining order] and preliminary injunction, and then addressing [the Appellees'] motions on the pleadings, RDC did not submit a more detailed complaint in 2011." Appellant's App. 148. RDC, however, has failed to explain why it waited approximately fourteen months after its previous request to file a successive amended complaint was denied before filing its instant request. Further,

14

while RDC does assert that the proposed successive amended complaint contained some supplemental facts that allegedly occurred after it filed the second amended complaint, it does not specify on appeal how these supplemental facts were relevant to its previously alleged claims.

Upon review, we conclude that the trial court did not abuse its discretion in denying RDC's April 18, 2013 request to file a successive amended complaint. The record demonstrates that the filing of the proposed successive amended complaint likely would have resulted in an undue delay of the matter as well as prejudice to the Appellees. RDC does not explain why it waited approximately fourteen months after its prior request to file a successive amended complaint was denied before filing its instant request. Unlike in *Kreilein*, nothing in the record suggests that RDC's delay in seeking to add the additional counts and defendants or to re-allege the previously dismissed claims was due to any dilatory action by the Appellees.

Further, at the time RDC filed the instant request, the matter was set for trial and discovery deadlines were quickly approaching. It seems reasonable to assume that the filing of the proposed successive amended complaint, which, again, sought to add numerous additional counts, add numerous additional defendants, and re-allege claims that had been dismissed more than a year prior, would have resulted in an extension of the previously-set discovery deadlines and delay of trial. In addition, it is also reasonable to assume that the filing of the proposed successive complaint would have resulted in an increased financial

15

burden for the Appellees.[3]

## II. Whether the Trial Court Abused Its Discretion in Denying RDC's Request to File Supplemental Designated Evidence

### A. Standard of Review and Relevant Authority

Trial Rule 56(C) provides that a party opposing a motion for summary judgment "shall have thirty (30) days after service of the motion to serve a response and any opposing affidavits." Trial Rule 56(I) provides that "[f]or cause found, the Court may alter any time limit set forth in this rule upon motion *made within the applicable time limit*." (Emphasis added). Trial Rule 56(E), however, provides that "[t]he court *may* permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits." (Emphasis added).

The decision of whether to allow a party to file untimely supplemental designated materials pursuant to Trial Rule 56(E) lies within the trial court's discretion. *Ind. Univ. Med. Ctr., Riley Hosp. for Children v. Logan*, 728 N.E.2d 855, 859 (Ind. 2000); *Winbush v. Mem'l Health Sys., Inc.*, 581 N.E.2d 1239, 1243 (Ind. 1991); *Estate of Collins v. McKinney*, 936 N.E.2d 252, 258 (Ind. Ct. App. 2010), *trans. denied*. Again, "[a]n abuse of discretion occurs when the trial court's decision is against the logic and effect of the facts and circumstances before it." *Logan*, 728 N.E.2d 859.

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and

---

[3] RDC also appears to claim for the first time on appeal that the trial court could have granted its request only with respect to Powers and the existing defendants. To the extent that this claim is raised for the first time on appeal, it is waived. *See Heaphy v. Ogle*, 896 N.E.2d 551, 555 (Ind. Ct. App. 2008) (providing that failure to present an argument or issue to the trial court results in waiver of the claim on appeal). Further, even if RDC did raise this claim below, RDC does not cite to any authority in support of this claim.

16

shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies not previously self-authenticated of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.

Trial Rule 56(E). "Unsworn statements and unverified exhibits do not qualify as proper [Trial] Rule 56 evidence." *Logan*, 728 N.E.2d at 858. Stated another way, a party "does not 'demonstrate' anything to a court by filing an unsworn allegation." *Nu-Sash of Indpls., Inc. v. Carter*, 887 N.E.2d 92, 96 (Ind. 2008).

In addition, an expert's opinion does not constitute properly designated evidence where there is no evidence designated regarding the expert's qualifications. *See* T.R. 56(E) (requiring that all supporting and opposing affidavits shall set forth admissible facts and show that the affiant is competent to testify to the matters stated therein).

> Indiana Evidence Rule 702(a) requires that an expert be qualified as such by evidence of knowledge, skill, experience, training, or education. *State Auto. Ins. Co. v. DMY Realty Co.*, 977 N.E.2d 411, 423 (Ind. Ct. App. 2012). Therefore, before an expert may testify about a subject, the proponent of the expert must show that the expert is competent in that subject. *Id*. In addition, the proponent of expert testimony must show that the subject matter is distinctly related to some scientific field, business, or profession beyond the knowledge of the average layperson. *Jackson v. Trancik*, 953 N.E.2d 1087, 1092 (Ind. Ct. App. 2011).

*Think Tank Software Dev. Corp. v. Chester, Inc.*, 988 N.E.2d 1169, 1177 (Ind. Ct. App. 2013), *trans. denied*. "[T]he unsworn letter from an expert may not be considered." *Johnston v. State Farm Mut. Auto. Ins. Co.*, 667 N.E.2d 802, 806 (Ind. Ct. App. 1996).

## B. Analysis

RDC contends on appeal that the trial court abused its discretion in denying its request to file supplemental designated materials prior to the summary judgment hearing. For their

17

parts, the Appellees claim that the trial court did not abuse its discretion in denying RDC's request to file supplemental designated evidence because supplemental designated materials can never be allowed by the trial court.[4]

## 1. Discussion of Relevant Prior Appellate Decisions

In *Winbush*, 581 N.E.2d at 1241, a medical malpractice case, the hospitals and physicians named in Winbush's complaint (collectively, "the defendants") sought summary judgment. After numerous continuances, the trial court conducted a hearing on the pending summary judgment motions on May 11, 1989. *Id*. at 1242. The following day, on May 12, 1989, Winbush filed supplemental answers to interrogatories and responses to requests for production which included the detailed affidavits of the physicians previously identified as intended expert witnesses. *Id*. Winbush also filed a written request for the trial court to consider the supplemental materials when ruling on the pending motions for summary judgment. *Id*. Soon thereafter, the defendants sought to strike the supplemental materials filed by Winbush. *Id*. The trial court subsequently granted the defendants' motions to strike and for summary judgment. *Id*.

On appeal, the Indiana Supreme Court noted that Winbush had promptly opposed the motions for summary judgment with responses indicating that expert medical witnesses would testify contrary to the opinion of the medical review panel. *Id*. at 1243. The Indiana Supreme Court further acknowledged, however, that the supplemental affidavits of these experts were not timely filed. *Id*. While acknowledging that the question presented on

[4] Contrary to the Appellees' position and counsel for the Appellees' assertion during oral argument, the applicable standard of review for the admission of supplemental designated materials is an abuse of

18

appeal was "an extremely close question," the Indiana Supreme Court concluded that "because the rule delegates such decision to the discretion of the trial court, and because there were ample opportunities for [Winbush] to have timely filed the affidavits, we decline to reverse for an abuse of discretion." *Id*.

In *Tannehill by Podgorski v. Reddy*, 633 N.E.2d 318, 319 (Ind. Ct. App. 1994), Reddy filed a motion for summary judgment on September 15, 1992. Tannehill subsequently requested and was granted an enlargement of time within which to file her response to Reddy's motion for summary judgment. *Id*. After Tannehill filed a response and supporting affidavit, Tannehill sought permission to file a second affidavit. *Id*. at 320. Although the second affidavit was untimely filed, Tannehill argued that it should be considered by the trial court as supplemental to the timely-filed affidavit. *Id*. Reddy moved to strike the second affidavit. *Id*. The trial court subsequently struck the second affidavit and granted Reddy's motion for summary judgment. *Id*. In concluding that the trial court acted within its discretion in denying Tannehill's attempt to file the supplemental affidavit, this court noted that Tannehill had ample opportunity to have timely filed her affidavit but failed to do so. *Id*.

In *Logan*, 728 N.E.2d at 858, the Hospital filed an interlocutory appeal claiming that the trial court erroneously denied its motion for summary judgment after it abused its discretion by allowing Logan to file untimely supplemental designated evidence. The record reflected that Logan timely designated her affidavit as evidence in support of her response in opposition to the Hospital's motion for summary judgment. *Id*. Logan attached twelve exhibits to her affidavit. *Id*. However, these twelve exhibits were inadmissible because the

discretion standard.

exhibits consisted of uncertified documents and unsworn statements. *Id.* One of these inadmissible exhibits was the unsworn affidavit of Arthur R. Schramm, M.D. *Id.* Logan specifically referred to Dr. Schramm's opinion in her timely-filed affidavit. *Id.* The trial court allowed Logan to file an untimely sworn copy of Dr. Schramm's affidavit prior to ruling on the Hospital's motion for summary judgment. *Id.*

Determining that Dr. Schramm's affidavit "expands on the reference to him and his opinion found in Logan's own timely filed affidavit," the Indiana Supreme Court viewed the untimely filed sworn copy of Dr. Schramm's affidavit as "merely a supplement of Logan's affidavit." *Id.* at 859. Upon review, the Indiana Supreme Court concluded that the trial court did not abuse its discretion in allowing Logan to file the untimely successive designated evidence. *Id.* at 859-60. In coming to this conclusion, the Indiana Supreme Court noted that while Dr. Schramm's sworn affidavit was filed after the deadline date, it was filed well before the hearing on the Hospital's motion for summary judgment. *Id.* at 859. The Indiana Supreme Court further noted that the Hospital neither argued nor demonstrated that "the supplemental affidavit work[ed] to its prejudice." *Id.* at 860.

In *Estate of Collins*, 936 N.E.2d at 256, McKinney filed a motion for summary judgment on May 8, 2008. The Estate responded to McKinney's motion and sought to strike certain of McKinney's exhibits. *Id.* Following a hearing, the trial court granted McKinney seven days to submit additional documentation in support of the challenged exhibits. *Id.* at 256-57. The trial court also granted the Estate an additional seven days beyond that to respond to McKinney's supplemental submission. *Id.* at 257. McKinney timely filed

additional documentary support. *Id.* The Estate did not file any documentary support in response to McKinney's supplemental submission. *Id.* The trial court subsequently granted summary judgment in favor of McKinney. *Id.*

On appeal, the Estate argued that the trial court abused its discretion in allowing McKinney to file additional documentation following the hearing on the pending motions. *Id.* In concluding that the trial court did not abuse its discretion in this regard, this court noted that the trial court was particularly troubled by the Estate's "form over substance" insistence that McKinney's designated evidence be excluded because the Estate sought to preclude the trial court from considering documents that the Estate's attorney had drafted and filed with the trial court in prior litigation against McKinney. *Id.* at 258. This court further noted that the record did not demonstrate that the Estate was prejudiced by the trial court's decision as the "supplemental affidavit presented no new substantive evidence, the Estate had already addressed the previously designated evidence in its brief, and the Estate failed to renew its motion to strike upon McKinney's submission of the supplemental affidavit." *Id.*

### 2. Application of the Relevant Authority to the Facts Presented in the Instant Matter

In October of 2013, the Appellees filed motions for summary judgment. The Appellees also filed designations of evidence in support of their motions for summary judgment. RDC filed a timely consolidated response together with supporting designated materials. The Appellees then filed replies in support of their motions for summary judgment. The Appellees also filed a collective motion to strike certain materials designated by RDC. In this motion, the Appellees sought to strike certain exhibits, claiming that the

exhibits in question were unauthenticated, uncertified, and unsworn. The Appellees also sought to strike certain other exhibits, claiming that these other exhibits contained expert opinions but were devoid of any testimony or evidence demonstrating that the claimed expert met the requirements of Indiana Evidence Rule 702(a). RDC subsequently requested permission to file supplemental designated evidence, seemingly for the purpose of curing the above-stated deficiencies in the challenged exhibits. Following a hearing conducted on December 26, 2013, the trial court denied RDC's request to file supplemental designated evidence and struck the challenged exhibits from RDC's designated evidence.

In its appellate brief, RDC claims that the trial court abused its discretion in denying its request to file the supplemental designated evidence because "there has been no claim that there would be any prejudice to the defendants by allowing the supplementation here." Appellant's Br. p. 33. RDC further claims that it did not attempt to add new substantive evidence, but rather that the supplemental evidence was offered to correct the lack of authentication of certain exhibits and to add the qualifications of the expert witnesses whose opinions had been previously submitted. The Appellees dispute RDC's claim that the supplemental materials did not contain new substantive evidence.

The challenged original designated materials include:

(1)     Exhibit 4—2010 Thomas Raynor appraisal;
(2)     Exhibit 5—letter from Glen Patterson dated March 21, 1994;
(3)     Exhibit 6—letter from David Wickland dated April 1, 2008;
(4)     Exhibit 7—emails to and from David Jenson dated January, 19 2010 through March 2, 2010;
(5)     Exhibit 8—PRA 2010 Financial Statement;
(6)     Exhibit 10—Letter of Intent signed by purchasers but not sellers;
(7)     Exhibit 11—emails to and from Christopher Heaney dated January 20,

22

2011 through May 31, 2011;

(8)    Exhibit 26—deposition of Timothy Miles, page 149;
(9)    Exhibit 27—deposition of Thomas Raynor, pages 25 and 44;
(10)   Exhibit 28—Timothy Miles appraisal report dated September 19, 2011;
(11)   Exhibit 29—Sharmat appraisal report dated June 27, 2013; and
(12)   Exhibit 30—Sharmat appraisal report dated September 25, 2013.

Appellant's App. pp. 380-81, 398-429, 437-59, 526-613. The supplemental designated

materials include:

(1)    Exhibit 31—deposition of Thomas Raynor, pages 3-4 and 9;
(2)    Exhibit 32—deposition of Andrew Sharmat, pages 6-9, 56-57, and 149-59;
(3)    Exhibit 33—deposition of Timothy Miles, pages 4-16, 67-92;
(4)    Exhibit 34—affidavit of Thomas Rueth;
(5)    Exhibit 35—affidavit of Timothy Rueth; and
(6)    Exhibit 36—affidavit of Timothy Miles.

Appellant's App. pp. 666-703.

Upon review, we determine that the supplemental designated materials reflect an

attempt by RDC to cure the lack of authentication of the challenged exhibits and to add the

qualifications of the expert witnesses whose opinions were included in RDC's original

designated evidence. The supplemental designated materials do not appear to contain any

new substantive evidence. However, even though the supplemental designated materials do

not appear to contain new substantive evidence, RDC has failed to prove that the trial court

abused its discretion in denying its request to file supplemental designated materials.

Despite RDC's claim to the contrary, we conclude the Appellees would have been

prejudiced by a decision by the trial court to allow RDC to file the supplemental designated

materials. RDC's request to supplement its designated evidence came after the Appellees

had filed their replies to RDC's response in opposition of their motions for summary

23

judgment, leaving the Appellees with no opportunity to challenge or respond to the supplemental designated evidence. Further, the supplemental designated evidence was filed a mere nine days before the scheduled hearing on the Appellees' motions for summary judgment. In addition, as RDC has acknowledged on appeal, it sought to file the supplemental designated evidence to correct deficiencies in its timely-filed designation of evidence relating to authentication and qualification of experts. Nothing in the record suggests that RDC could not have provided the required authentication, certification, and proof of qualification when it filed its original timely-filed designated evidence or within the allotted thirty-day time period provided for by Trial Rule 56(C).

### III. Whether the Trial Court Erred in Granting Summary Judgment in Favor of the Appellees

### A. Standard of Review

Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. When reviewing a decision to grant summary judgment, this court applies the same standard as the trial court. *Best Homes, Inc. v. Rainwater*, 714 N.E.2d 702, 705 (Ind. Ct. App. 1999). We must determine whether there is a genuine issue of material fact requiring trial, and whether the moving party is entitled to judgment as a matter of law. *Id.* Neither the trial court nor the reviewing court may look beyond the evidence specifically designated to the trial court. *Id.*

A party seeking summary judgment bears the burden to make a prima facie showing that there are no genuine issues of material fact and that the party is entitled to judgment as a matter of law. *American Management, Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 428 (Ind. Ct. App. 1996). Once the moving party satisfies this burden through evidence designated to the trial court pursuant to Trial Rule 56, the non-moving party may not rest on its pleadings, but must designate specific facts demonstrating the existence of a genuine issue for trial. *Id.* A trial court's grant of summary judgment is "clothed with a presumption of validity," and the appellant bears the burden of demonstrating

24

that the trial court erred. *Best Homes, Inc.*, 714 N.E.2d at 706 (quoting *Barnes v. Antich*, 700 N.E.2d 262, 264-65 (Ind. Ct. App. 1998)).

*Heritage Dev. of Ind., Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 887-88 (Ind. Ct. App. 2002).

### B. Relevant Provisions of the PRA LPA

Article Fifteen of the PRA LPA sets forth the rights, duties, and obligations of the partnership's general and limited partners. The relevant portions of Article Fifteen state the following:

> Article XV, ¶ 15.2:
> The General Partners by unanimous approval of the General Partners *are specifically authorized and vested with the power on behalf of the partnership, without any further consent of the Limited Partners* to execute contracts or modify, enforce, cancel or terminate contracts for the development and improvement of any real estate owned by the partnership and to delegate their authority concerning such development and improvement contracts to an agent; to prepay in whole or in part, refinance, recast, increase, modify or extend any mortgages which may affect the property owned by the partnership, in connection therewith to execute for and on behalf of the partnership any extensions, renewals or modifications of such mortgages or execute new mortgages on the property in lieu of the existing mortgages; to *sell, convey, or lease all of the property owned by the partnership* and to execute any and all other instruments to carry out the intention and purpose hereof; provided, however, that nothing contained herein shall permit any personal liability to attach to the Limited Partners.

> Article XV, ¶ 15.6:
> In addition to the specific rights and powers herein granted to the General Partners, they shall possess and may enjoy and exercise all of the rights and powers of General Partners as provided in the Uniform Limited Partnership Act and under the Partnership Act of the State of Indiana, where applicable.

> Article XV, ¶ 15.7:
> The General Partners shall in no event be liable to the Limited Partners for any act or omission performed or omitted by them in good faith in pursuance of the authority granted to them by this Agreement, *but only for fraud, bad faith or*

*gross negligence*.

Article XV, ¶ 15.8:
The Limited Partners *shall not take part in the management of the business or transact any business for the partnership*, and shall have no power to sign for or to bind the partnership. Any payment to the Limited Partners shall be in compliance with the Indiana Limited Partnership Act.

Appellant's App. pp. 222-24 (empheses added).

## C. Analysis

RDC contends that the trial court erred in granting summary judgment in favor of each of the Appellees. The propriety of the trial court's decision will be set out below with respect to each Appellee individually.

## 1. Powers

Limited partnerships are a creature of statute, the primary purpose of which is to permit a form of business enterprise, other than a corporation, in which persons can invest money without being personally liable for all partnership debts. *Allen v. Amber Manor Apartments Partnership*, 95 Ill. App. 3d 541, 51 Ill. Dec. 26, 420 N.E.2d 440, 444 (1981). The fundamental difference between the liability of general and limited partners is that general partners are responsible for the debts and obligations of the firm, without regard to the amounts contributed by them to the capital, while limited partners are not personally liable if they have substantially complied with the statutory provisions. *Id*.

> [It is well established] that the partners may make any agreement between themselves that they deem desirable so long as it is not in violation of prohibitory statutory provisions, the common law, or public policy. They may establish whatever duties and obligations they wish, and as between them their agreement controls, at least if it is complete and if there are no circumstances which might result in prejudice to creditors. The Uniform Limited Partnership Acts are primarily designed to protect creditors, not partners. So long as the provisions of the agreement are followed, no partner can complain.

59A AM. JUR. 2d *Partnership* § 1279 (1987) (footnotes and citations omitted). A limited partnership agreement, however, incorporates the terms of

26

the governing statutes, and by signing it, the partners agree to the provisions so incorporated. 59A AM. JUR. 2d Partnership § 1283. Provisions of the partnership agreement which "contravene or tend to defeat the purpose of those statutes" will not be enforced. *Id*.

*Kelsey v. Kelsey*, 714 N.E.2d 187, 190-91 (Ind. Ct. App. 1999).

The Indiana Revised Uniform Limited Partnership Act ("IRULPA") provides that "[e]xcept as provided in this article or in the partnership agreement, a general partner of a limited partnership has the rights and powers of, and is subject to the restrictions of, a partner in a partnership without limited partners." Ind. Code § 23-16-5-3(a). Indiana Code section 23-16-5-3(c) further provides that "[e]xcept as provided in this article or in the partnership agreement, a general partner of a limited partnership has the liabilities of a partner in a partnership without limited partners to the partnership and to the other partners."

In the instant matter, the PRA LPA specifically sets forth Powers's rights, duties, and obligations to the partnership. Again, the PRA LPA granted Powers, in his role as sole general partner, "the power on behalf of the partnership, without any further consent of the Limited Partners … to sell, convey, or lease all property owned by the partnership." Article XV, ¶ 15.2. The PRA LPA further limited Powers's potential liability to acts of fraud, bad faith, or gross negligence. Article XV, ¶ 15.7.

RDC concedes on appeal that pursuant to the terms of the PRA LPA, Powers can only be found to have breached his fiduciary duty and held liable to RDC upon a determination that Powers acted fraudulently, in bad faith, or with gross negligence. RDC argues, however, that the award of summary judgment in favor of Powers was improper because an issue of material fact remains as to whether Powers acted fraudulently, in bad faith, or with gross

negligence. For his part, Powers argues that he complied with the terms of the PRA LPA and compliance with a partnership agreement precludes any claim for breach of fiduciary duty.[5] Thus, Powers argues that the award of summary judgment in his favor was proper because there remains no issue of material fact as to whether he committed any act that could even potentially lead to liability for an alleged breach of his fiduciary duty to RDC.

### *Fraud*

Fraud has been defined as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." BLACK'S LAW DICTIONARY 775 (10th ed. 2014). In the instant matter, RDC failed to allege, and the designated evidence fails to suggest, that Powers acted in a fraudulent manner. As such, an award of summary judgment in favor of Powers was proper in this regard as the designated evidence does not appear to raise an issue of material fact as to whether Powers acted fraudulently.

In addition, to the extent that RDC claims that it is entitled to a presumption of fraud, this claim failed. This court has previously held that "a presumption of fraud attaches to transactions that benefit a fiduciary." *In re Estate of Wade*, 768 N.E.2d 957, 964 (Ind. Ct. App. 2002). On appeal, RDC attempts to claim that the sale of the BRCC benefited Powers personally, leading to a presumption of fraud. RDC, however, failed to designate any

---

[5] Powers cites to cases from other jurisdictions in support of his claim that compliance with a partnership agreement precludes a claim for breach of a fiduciary duty. *See Sonet v. Timber Co., L.P.*, 722 A.2d 319, 322 (Del. Ch. 1998) (quoting *Wilmington Leasing, Inc. v. Parrish Leasing Co. L.P.*, 1996 WL 752364 (Del. Ch. 1996), which provided that any fiduciary duty that might be owed by the partners is satisfied by compliance with the applicable provisions of the partnership agreement); *Whalen v. Connelly*, 545 N.W.2d 284, 292 (Iowa 1996) (providing that because the partnership agreement had not been breached, there could be no breach of any fiduciary duty).

evidence demonstrating that Powers received a personal benefit from the sale of the BRCC.

The designated evidence demonstrates that Powers, by virtue of his position as general partner, was entitled to receive financial compensation following the sale of partnership property. Powers, however, did not receive the financial compensation to which he was entitled. Not only did Powers not receive any financial compensation, Powers repaid a debt owed to the bank by the BRCC out of his personal funds prior to the sale of the BRCC. In addition, as the Appellees point out, if the three-million-dollar sale price was unreasonably low, this fact works to Powers's detriment, not his benefit, because it could potentially lower the value of any future payout from PRA to the partners, including Powers.

In trying to prove that an issue of material fact exists as to whether Powers received a personal benefit from the sale, RDC argues that Powers benefited because the sale allegedly satisfied his desire to clarify his estate. RDC asserts that Powers's desire to clarify his estate could potentially be for tax purposes. The assertion that Powers benefited from the sale because it enabled him to clarify his estate for tax purposes was not raised below and, as such, is waived for appellate consideration. *See Heeb v. Smith*, 613 N.E.2d 416, 423 (Ind. Ct. App. 1993) (providing that issues not raised before the trial court in a summary judgment pleading cannot be argued for the first time on appeal and are waived), *trans. denied*. Further, waiver notwithstanding, a party cannot create a genuine issue of fact merely by presenting an unsupported opinion that favors a party's position. *Miller v. Monsanto Co.*, 626 N.E.2d 538, 544 (Ind. Ct. App. 1993). Furthermore, RDC does not argue and the designated evidence does not indicate what personal benefit Powers actually received from

the allegedly desired clarification of his Estate or how the sale of the BRCC impacted this alleged benefit.

### *Bad Faith*

Bad faith has been defined as "[d]ishonesty of belief, purpose, or motive." BLACK'S LAW DICTIONARY 166 (10th ed. 2014). Poor judgment or negligence do not amount to bad faith; the additional element of conscious wrongdoing must also be present. *Allstate Ins. Co. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008) (internal quotation omitted); *see also Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 310 (Ind. Ct. App. 2001). A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will. *Fields*, 885 N.E.2d at 732; *see also Hoosier Ins. Co.*, 745 N.E.2d at 310 (citing *Colley v. Ind. Farmers Mut. Ins. Grp.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998)). A bad faith determination inherently includes an element of culpability. *Fields*, 885 N.E.2d at 732; *see also Hoosier Ins. Co.*, 745 N.E.2d at 310 (citing *Colley*, 691 N.E.2d at 1261).

The second amended complaint alleged that the Letter of Intent and/or Purchase Agreement relating to the sale of the BRCC was executed in bad faith because Powers failed to sell the BRCC in a commercially and economically sound manner. Specifically, RDC claimed that the BRCC was sold for less than market value and that Powers failed to accept competitive bids for the BRCC. RDC argues on appeal that because Powers sold the BRCC below market value, Powers deprived RDC of the full value of its investment. However, the designated materials which RDC claims indicated that the BRCC was sold at less than

30

market value were among the designated materials that were struck by the trial court.

In addition, RDC points to no designated evidence indicating that Powers was required to seek out and accept any competitive bids before selling the BRCC. RDC points to no competitive bids which were submitted but rejected by Powers. RDC merely argues that either it or the partners that made up RDC should have been given the opportunity to make a bid.[6] In addition, as is pointed out above, if the three-million-dollar sale price was unreasonably low, this fact works to Powers's detriment, not his benefit, because it could potentially lower the value of any future payout from PRA to the partners, including Powers. It seems unreasonable that Powers would commit an act in bad faith knowing that said act would work to his detriment.

Further, to the extent that RDC argues that Powers acted in bad faith because maintaining control of the BRCC and clarifying his estate were Powers's primary motivating factors, RDC fails to point to designated evidence that would suggest that these factors were in fact Powers's primary motivating factors in deciding to sell the BRCC to the Preservation Committee. In fact, the designated evidence indicates that it was the members of the Preservation Committee, not Powers, who wanted to maintain control of the BRCC.[7] However, even assuming that these factors were considered by Powers, the mere fact that he considered these factors is insufficient to create an issue of material fact as to whether

---

[6] RDC does acknowledge on appeal that it cannot legally make a bid due to its status as being in a state of dissolution.

[7] The fact that one member of the Preservation Committee was Powers's nephew is insufficient to prove that Powers sought to maintain control of the BRCC when he agreed to sell the BRCC to the Preservation Committee. This is especially true because the record is silent as to the nature of Powers's relationship, or lack thereof, with his nephew.

Powers acted with a conscious wrong doing, *i.e.*, a state of mind that reflected a dishonest purpose, moral obliquity, furtive design, or ill will.

### *Gross Negligence*

Gross negligence has been defined as "a lack of even slight diligence or care" or "a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages." BLACK'S LAW DICTIONARY 1197 (10th ed. 2014). RDC failed to allege, and the designated evidence fails to suggest, that Powers acted with gross negligence. As such, an award of summary judgment in favor of Powers was proper as the designated evidence does not raise an issue of material fact as to whether Powers acted with gross negligence.

### 2. Remaining Appellees

With respect to the remaining Appellees, RDC claims that summary judgment was improper because Margaret Powers and Frankie Fesko breached the fiduciary duty that each owed to RDC. Alternatively, RDC claims that summary judgment was improper because each of the remaining Appellees aided or abetted Powers in allegedly breaching his fiduciary duty to RDC.

### *a. Breach of Fiduciary Duty by Margaret and Frankie*

RDC alleged below that Margaret and Frankie owed a fiduciary duty to RDC in light of their status as limited partners of PRA. Margaret and Frankie argued that they did not owe a fiduciary duty to RDC because limited partners do not generally owe a fiduciary duty to the partnership or to other limited partners.

"Under common law, general partners owe each other and the partnership fiduciary duties until final termination of the partnership." *In re Rueth Develop. Co.*, 976 N.E.2d 42, 53 (Ind. Ct. App. 2012), *trans. denied*. However, there is no corresponding common law rule establishing a fiduciary duty owed by limited partners. Indeed, while the IRULPA establishes that a general partner owes a fiduciary duty to the partnership and to the other partners, Ind. Code § 23-16-5-3(c), the IRULPA contains no such provision establishing that a limited partner owes a fiduciary duty to the partnership or to the other partners.

RDC concedes on appeal that limited partners do not generally owe a fiduciary duty to the partnership or to the other limited partners. RDC cites to no Indiana authority stating otherwise. RDC argues, however, that Indiana should adopt the position of various other jurisdictions, including Illinois, Kansas, and Delaware, that under certain circumstances, a limited partner may have a fiduciary duty to other limited partners.[8] S*ee In re Kids Creek Partners LP*, 212 B.R. 898, 937 (Bankr. N.D. Ill. 1997); *In re Villa W. Assocs.*, 193 B.R. 587, 593 (Bankr. D. Kan. 1996); *Feely v. NHAOCG, LLC*, 62 A.3d 649, 662 (Del. Ch. 2012). We decline RDC's invitation to adopt the position of the other cited jurisdictions and instead apply the rule that limited partners do not generally owe a fiduciary duty to other limited partners. As such, we affirm the trial court's determination that an award of summary judgment was proper because Margaret and Frankie did not owe, much less breach, a fiduciary duty to RDC.

---

[8] In its reply brief, RDC also asserts that Texas, North Dakota, and California have adopted the rule that a limited partner may have a fiduciary duty to other limited partners in certain circumstances. *See Strebel v. Wimberly*, 371 S.W.3d 267 (Tex. Ct. App. 2012); *Red River Wings, Inc. v. Hoot, Inc.*, 751 N.W.2d 206 (N.D. 2008); *Tri-Growth Ctr. City, Ltd. v. Silldorf, Burdman, Duignan & Eisenber*, 216 Cal. App. 3d 1139

## b. Aided or Abetted Breach of Fiduciary Duty

RDC also argues that the trial court erred in granting summary judgment in favor of Margaret, Frankie, Timothy, and Williamson because an issue of material fact remains as to whether they aided or abetted Powers in breaching his fiduciary duty to RDC. However, RDC's "aiding and abetting" claim is dependent upon a breach of fiduciary duty by Powers. As such, because we have concluded that summary judgment in favor of Powers was proper because no genuine issue of material fact remains as to whether Powers breached his fiduciary duty to RDC, Margaret, Frankie, Timothy, and Williamson cannot be found to have aided or abetted Powers in doing so.

## CONCLUSION

In sum, we conclude that the trial court acted within its discretion in denying RDC's request for leave to amend its complaint and in denying RDC's request to file supplemental designated materials. We further conclude that the trial court did not err in granting summary judgment in favor of the Appellees. Accordingly, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

BARNES, J., and CRONE, J., concur.

---

(Cal. 4th Dist. Ct. App. 1989).