# FOR PUBLICATION

ATTORNEY FOR APPELLANTS:

**CHRISTOPHER R. PUTT**
**ROBERT J. PALMER**
May Oberfell Lorber
Mishawaka, Indiana

ATTORNEYS FOR APPELLEES:

**KARL L. MULVANEY**
**BRIAN W. WELCH**
**GREGORY A. NEIBARGER**
**SHANNON D. LANDRETH**
Bingham Greenebaum Doll LLP
Indianapolis, Indiana

**FILED**
Nov 19 2012, 9:34 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DR. NORMA KREILEIN, ROCK EMMERT, and HEALTHY DUBOIS COUNTY, INC., | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| vs. | ) | No. 19A04-1201-MI-51 |
| | ) | |
| COMMON COUNCIL OF THE CITY OF JASPER and JASPER UTILITY BOARD, | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE DUBOIS CIRCUIT COURT
The Honorable M. Lucy Goffinet, Special Judge
Cause No. 19C01-1108-MI-298

**November 19, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Dr. Norma Kreilein, Rock Emmert, and Healthy Dubois County, Inc. (collectively "HDC") filed a complaint against the Common Council of the City of Jasper ("the Council") and the Jasper Utility Board ("the Utility Board") (collectively "Jasper") seeking declaratory judgment and injunctive relief for alleged violations of the Indiana Open Door Law. Jasper filed a counterclaim against HDC alleging that its complaint is "frivolous, meritless, groundless, baseless and vexatious" and seeking attorney's fees. Appellants' App. at 64. Following a bench trial, the trial court entered judgment in favor of Jasper on HDC's complaint and denied Jasper's counterclaim. HDC appeals and presents three dispositive issues for our review, namely, whether the trial court abused its discretion when it denied HDC's third motion to amend its complaint, motion to continue trial, and second motion to compel discovery.

We reverse and remand for further proceedings.[1]

**FACTS AND PROCEDURAL HISTORY**

Jasper owns a now-defunct coal-burning power plant. The plant is a "stranded asset" that costs Jasper between $75,000 and $100,000 per month to maintain. Transcript at 95. In January 2010, Jay Catasein, the managing member of Twisted Oak, LLC, contacted Gerald Hauersperger, the general manager of utilities with the City of Jasper, and discussed the possibility of converting the power plant to a biomass-burning power

---

[1] Because we find these issues regarding HDC's motions dispositive of this appeal, we do not reach the merits of the allegations asserted in HDC's complaint. We hold that the trial court abused its discretion when it denied HDC's motions to amend its complaint, continue trial, and compel discovery, and we remand for a new trial.

2

plant. In particular, Catasein and Hauersperger discussed the use of miscanthus grass to power the plant.

Accordingly, in 2010, Jasper developed and issued its first request for proposals ("RFP") concerning the conversion of the power plant, and Jasper received four responses from interested companies, including Twisted Oak. Thereafter, the Council and the Utility Board held joint executive sessions regarding the responses to the RFP in August and September 2010 and a special joint public meeting on October 25, 2010. At the public meeting, the Council and Utility Board voted to reject all of the responses and approved changes to the RFP.

In late October 2010, Jasper issued its second RFP concerning the plant conversion. Jasper received responses from Twisted Oak and Global Energy Solutions. Thereafter, on December 20, the Council and the Utility Board held a joint executive session regarding the responses and published a public memorandum describing that session. And on February 8, 2011, the Council and the Utility Board held a joint public meeting regarding the responses to the second RFP. Thereafter, the Utility Board agreed to pursue negotiations to lease the power plant to Twisted Oak.

In the meantime, a group of concerned citizens formed HDC to oppose the planned power plant conversion. In particular, HDC raised the issue of potential health effects associated with emissions from the burning of miscanthus grass, as well as problems local farmers might face in cultivating the grass. Dr. Kreilein, a pediatrician who treated patients residing in the area near the proposed plant, and several other local physicians expressed opposition to the plant conversion due to their concerns that

3

residents' health would be adversely impacted. And Dr. William Sammons, a pediatrician who has researched the health effects of biomass plants, spoke at public meetings about the "medical risks" associated with such a plant. Transcript at 187.

Despite the opposition of HDC and the physicians, Jasper proceeded to negotiate a lease agreement with Twisted Oak. A "volunteer group" was charged with negotiating the terms of the lease, and that group consisted of Jasper's Mayor, William Schmitt ("the Mayor"); a member of the Council, John Schroeder; the chairman of the Utility Service Board, Wayne Schuetter; the superintendent of the power plant, Wendel Toby; the City Attorney, Sandy Hemmerlein; outside counsel, Bill Kaiser; and the general manager of utilities for Jasper, Hauersperger. The volunteer group

> basically facilitated the discussions around the lease negotiations. [The group facilitated] the back and forth as far as protections to the City, to the rate payers[,] [considered] the dos and don'ts as far as emissions, and really put the draft documents together. [And] ultimately the utility board itself would review [the final draft lease agreement].

Transcript at 60. The volunteer group met approximately twelve to fifteen times, and Catasein, the managing member of Twisted Oak, participated in several of the meetings. None of the meetings of the volunteer group were open to the public, and there was no public notice of any of the meetings. The group provided the Council and the Utility Board with periodic updates on their progress in negotiations and made "recommendations." Id. at 114.

After the volunteer group presented a final draft to the Council and the Utility Board, Jasper scheduled a joint public meeting for August 5, 2011, to vote on approval of the lease agreement. HDC learned of the meeting two days in advance and, on August 4,

4

HDC filed a complaint for declaratory judgment on the issue of whether Jasper had violated Indiana's Open Door Law. The complaint further sought injunctive relief. Specifically, HDC sought, in part, a temporary restraining order to prevent the vote to approve the lease agreement. But HDC withdrew its request for a temporary restraining order on August 5.

At the August 5 joint public meeting, the Council members and the Utility Board members each explained the reasons behind his vote on the lease agreement. The final vote was all but one in favor of approving the lease agreement. Accordingly, the Council passed the resolution to enter into the lease agreement with Twisted Oak.

On August 12, HDC submitted its first request for production of documents to Jasper and a request for production of documents to non-party Twisted Oak. And on August 16, HDC filed its first motion to amend its complaint by interlineation. In particular, HDC amended its prayer for relief as follows: a declaration that Jasper's actions described in the complaint were in violation of Indiana law; to enjoin Jasper from executing any final draft of a lease which was the subject of or resulted from any illegal or improperly held executive sessions until a proper remedy could be found and implemented; to enjoin Jasper from commencing performance under any such lease until a judicial determination of statutory compliance could be made; for an award of fees and expenses; and for all other proper relief. On August 22, Jasper filed its answer and counterclaim, and HDC filed its answer to the counterclaim on August 26.

On August 29, Jasper filed a motion to set an expedited hearing on HDC's complaint for declaratory judgment. That same day, following a conference call with the

attorneys, the trial judge recused himself from the case. And on September 6, HDC filed its second request for production of documents, requesting, in part, all records of executive sessions held by either the Council or the Utility Board in September 2010, May 2011, and August 2011. On September 14, a Special Judge was appointed to preside over the case. And on October 4, Jasper renewed its motion to expedite the hearing on declaratory judgment.

On October 11, HDC filed a response to the motion for expedited hearing and moved the trial court to compel discovery. In particular, HDC averred that: HDC had proposed dates in October for depositions, but Jasper "orally represented to [HDC]'s counsel that [it] will object to any depositions"; in response to the discovery request seeking all minutes of executive sessions, Jasper produced only public memoranda; Jasper objected to the third-party request for production to Twisted Oak; and Jasper responded ambiguously to certain requests for correspondence regarding the power plant conversion. Transcript at 88. HDC requested an additional sixty or ninety days to conduct discovery. In addition, HDC requested a hearing to determine whether a protective order would be appropriate to guard against the disclosure of any confidential material in discovery.

On October 19, HDC filed a notice of taking the depositions of Clerk/Treasurer Juanita Boehm, Mayor Schmitt, Utility Board member Rick Stradtner, and Hauersperger on November 1. On October 27, Jasper moved for a protective order to quash the deposition notices and subpoenas. In support of that motion, Jasper argued that the facts relevant to HDC's complaint were undisputed and that, therefore, the depositions were

6

nothing more than a "fishing expedition." Id. at 97. Also on October 27, HDC filed another motion to compel discovery regarding the outstanding requests for production and notices of depositions. On November 3, Jasper responded to the motion to compel and argued that the issues before the trial court were legal issues and no additional discovery was necessary.

On November 21, HDC filed its second motion to amend its complaint to add a fifth count. Also on that date, the trial court held a hearing on HDC's motion to compel discovery and Jasper's motion to expedite the declaratory judgment hearing. On November 28, Jasper filed a response in opposition to HDC's second motion to amend complaint. And on November 30,[2] the trial court issued its order granting the motions to compel and to expedite the declaratory judgment hearing as follows: the court set the matter for a three-day bench trial commencing on December 19; the court ordered that HDC be permitted to take depositions and obtain copies of any minutes of the executive sessions identified in the complaint; the court permitted HDC to inquire during depositions regarding meetings attended by Catasein; and the court issued a protective order prohibiting HDC from disclosing information pertaining to executive sessions revealed in the course of discovery. Then, on December 7, the trial court granted in part and denied in part HDC's second motion to amend its complaint.

Following depositions on December 6 and 7, HDC filed motions to continue the trial set for December 19, to compel discovery, and to amend its complaint for the third time. HDC's third motion to amend its complaint sought to add allegations concerning

---

[2] In its motion to continue trial, HDC states that the trial court ordered Jasper to comply with discovery requests on November 21. But the trial court's order is dated November 30, so we will use that date.

7

the volunteer group that negotiated the lease agreement, as facts about the volunteer group were revealed in the depositions. And HDC's motion to continue the trial alleged that Jasper had not yet complied with certain discovery requests despite the trial court's order compelling said discovery on November 30, and additional discovery was necessary to obtain information regarding the volunteer group meetings. In addition, HDC alleged that the depositions had revealed possible additional violations of the Indiana Open Door Law, which would require further discovery.

The trial court had not yet ruled on HDC's motions by the first day of trial, December 19. Accordingly, on the morning of trial, HDC renewed its motions to compel discovery, amend its complaint, and continue the trial. Jasper opposed those motions, and the trial court denied the motions. At the conclusion of the bench trial, the trial court found in Jasper's favor on "all counts and claims in Plaintiffs' original and amended complaints" and found in favor of HDC on Jasper's counterclaim. Appellants' App. at 21. The trial court entered findings of fact and conclusions thereon. The following conclusions are particularly relevant to the issues in this appeal:

> 30. The Volunteer Group had no decision making authority. The Volunteer Group did not constitute a quorum[3] of the City Council or the Utility Service Board.

---

[3] Indiana Code Section 5-14-1.5-3.1 provides in relevant part that the governing body of a public agency violates the Indiana Open Door Law if members of the governing body participate in a series of at least two gatherings of members of the governing body and the series of gatherings meets all of the following criteria:

(1) One of the gatherings is attended by at least three members but less than a quorum of the members of the governing body and the other gatherings include at least two members of the governing body.
(2) The sum of the number of different members of the governing body attending any of the gatherings at least equals a quorum of the governing body.
(3) All the gatherings concern the same subject matter and are held within a period of not more than seven consecutive days.

31. Based upon testimony the Court does not find that the Volunteer Group was formed in an attempt to evade Indiana's Open Door Law.

\* \* \*

34. The Court does not find the Defendants violated Indiana's Open Door Law or acted inappropriately in any executive meeting.

Id. This appeal ensued.

## DISCUSSION AND DECISION

HDC contends that the trial court abused its discretion when it denied HDC's third motion to amend its complaint, motion to continue trial, and second motion to compel discovery. In particular, HDC maintains that additional discovery is warranted and necessary to determine whether the volunteer group was a governing body and whether it violated Indiana's Open Door Law. Accordingly, HDC asserts that the trial court should have granted its third motion to amend its complaint to include allegations regarding the volunteer group, second motion to compel discovery, and its motion to continue trial. We must agree.

### Indiana's Open Door Law

The purpose of the Open Door Law is to ensure that the business of the State of Indiana and its political subdivisions be conducted openly so that the general public may be fully informed. City of Gary v. McCrady, 851 N.E.2d 359, 365 (Ind. Ct. App. 2006); see Ind. Code § 5-14-1.5-1. The provisions of this statute are to be liberally construed in order to give effect to the legislature's intention. McCrady, 851 N.E.2d at 365. The

---

(4) The gatherings are held to take official action on public business.

While Jasper maintains that the volunteer group "did not constitute a quorum of either the Council or the Board," Brief of Appellees at 43, and the trial court so found, this issue is not dispositive of this appeal.

9

Open Door Law requires that, except for those situations where an executive session is authorized, "all meetings of the governing bodies of public agencies must be open at all times for the purpose of permitting members of the public to observe and record them." Ind. Code § 5-14-1.5-3. For purposes of the Open Door Law, a meeting is defined as "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." Ind. Code § 5-14-1.5-2(c). "Official action" means to (1) receive information; (2) deliberate; (3) make recommendations; (4) establish policy; (5) make decisions; or (6) take final action. Ind. Code § 5-14-1.5-2(d). Executive sessions may only be held in certain instances, public notice must be given of executive sessions, and the public must be provided with memoranda and minutes identifying the subject matter considered in executive sessions. Ind. Code § 5-14-1.5-6.1.

Here, we find the issue at the heart of this appeal to be whether the volunteer group constituted a governing body of a public agency under the Open Door Law. It is undisputed that the volunteer group meetings were neither noticed nor open to the public.[4] Indiana Code Section 5-14-1.5-2(b) provides that a "governing body" means two or more individuals who are:

(1) a public agency that:

(A) is a board, a commission, an authority, a council, a committee, a body, or other entity; and

(B) takes official action on public business;

(2) the board, commission, council, or other body of a public agency which takes official action upon public business; or

---

[4] The trial court erroneously found that the volunteer group meetings were open to the public.

10

(3) <u>any committee appointed directly by the governing body or its presiding officer to which authority to take official action upon public business has been delegated</u>. . . .

(Emphases added).

The volunteer group consisted of seven people charged with negotiating the lease with Twisted Oak and making recommendations to the Council and the Utility Board. Jasper insists that the volunteer group was not "appointed directly" by a governing body and was not, therefore, a governing body of a public agency, as defined by statute. But there is nothing in the record explaining how the volunteer group was created and who assigned it the task to negotiate the lease agreement. And, as we explain below, we hold that HDC is entitled to have more time to conduct discovery to determine whether the volunteer group was a governing body of a public agency and whether the group violated the Open Door Law. Indeed, the evidence shows that the volunteer group both received information and "ma[d]e recommendations" regarding the lease with Twisted Oak, which may constitute "official action" under Indiana Code Section 5-14-1.5-2(d).

## Motion to Amend Complaint

We next address HDC's contention that the trial court abused its discretion when it denied HDC's third motion to amend its complaint to add an allegation that the volunteer group violated Indiana's Open Door Law. Pleading amendments by "leave of court" are governed by Trial Rule 15(A), which provides that "leave shall be given when justice so requires."[5] The stated policy of this court and our Supreme Court is to freely allow such amendments in order to bring all matters at issue before the court. <u>State Farm Mut. Auto.</u>

_____
[5] Trial Rule 15(A) provides in relevant part that a party may amend its complaint "once as a matter of course at any time before a responsive pleading is served[.]" HDC had already amended its complaint once under that provision.

11

Ins. Co. v. Shuman, 175 Ind. App. 186, 370 N.E.2d 941, 948 (1977) (citing Huff v. Travelers Indemnity Co., 266 Ind. 414, 363 N.E.2d 985, 989 (1977)). Leave to amend should be given unless the amendment will result in prejudice to the opposing party. Huff, 363 N.E.2d at 989.

In its decisions on whether to permit amendments to pleadings, the trial court is vested with a broad discretion. Id. An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. Hilliard v. Jacobs, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), trans. denied. We consider whether a trial court's ruling on a motion to amend is an abuse of discretion by evaluating a number of factors, including " 'undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment.' " Id. (quoting Palacios v. Kline, 566 N.E.2d 573, 575 (Ind. Ct. App. 1991)).

Here, HDC's efforts to timely obtain discovery in the course of these expedited proceedings[6] were thwarted time and time again by Jasper's refusal to cooperate. First, when HDC attempted to schedule depositions for October, Jasper did not comply. Jasper only agreed to schedule the depositions after the trial court ordered Jasper to do so on November 30. Accordingly, HDC arranged for several depositions to take place on December 6 and 7, and HDC had less than two weeks prior to trial to complete discovery

---

[6] Again, the trial court granted Jasper's request to expedite the declaratory judgment hearing under Indiana Code Section 5-14-1.5-7(g), which provides that a hearing on a claim brought under Indiana's Open Door Law shall be expedited. No Indiana case has specifically addressed that provision of the statute.

and to prepare for trial based on any new information obtained in the course of those depositions.

In its third motion to amend its complaint, HDC stated in relevant part:

4. Because of the expedited nature of this case, Plaintiffs have been forced to complete the Court Ordered discovery in less than 30 days prior to trial. At depositions taken by Plaintiffs on December 6, 2011, which depositions have not been transcribed at the filing of this Motion[1], Plaintiffs learned that:

A. A "volunteer committee" was used by the City to negotiate the subject lease with Jay Catasein. Further, that this volunteer committee was composed of certain members of Jasper's City Council, Utility Service Board and City employees. Further, that said Committee's meetings were not advertised to the public.

* * *

5. Plaintiffs were not aware, nor could they have been aware, of the above potential violations of the Indiana Open Door law . . . until these depositions were taken. As the Court has previously heard, the Plaintiffs sought and Defendants resisted discovery in this matter until the Court ordered discovery on November [30], 2011.

[Internal footnote 1: The Parties concluded two days of depositions on December 7, 2011. The Reporter is currently transcribing approximately 13 to 18 estimated hours of deposition testimony. When the depositions are transcribed, Plaintiffs will pinpoint the parts of those depositions which support this Motion.]

Appellants' Supp. App. at 1-2 (emphasis original).

On appeal, Jasper contends that the trial court properly denied HDC's third motion to amend its complaint because: HDC filed the motion only ten days prior to trial; the "allegations regarding the volunteer group" were "a complete departure from the allegations previously raised" regarding Indiana Open Door Law violations; HDC knew or should have known "of the existence of the volunteer group" long before the

13

depositions were taken; and the third amended complaint "would either force the City to develop on the eve of trial (and after discovery has closed) a defense to claims about other meetings by a different group or force the City to delay an expeditious resolution of the IODL challenges in the First Amended Complaint" which would "unduly prejudice the City." Brief of Appellees at 32-35.

First, whether HDC knew that the volunteer group existed when it filed its first complaint is of no moment. There is no evidence that prior to the December 2011 depositions HDC had any knowledge of specific facts concerning the volunteer group's role in negotiating the lease agreement or the fact that Catasein had met with the volunteer group several times. HDC obtained new information during the depositions, and it is entitled to a reasonable period of time to pursue additional discovery based on that new information.

Second, Jasper's contention that the issues related to the volunteer group are a "complete departure" from the issues raised in HDC's complaint and amended complaint is simply without merit. HDC filed its complaint based on alleged violations of the Open Door Law. HDC now argues that information learned from the depositions suggests that the volunteer group may have been formed in an attempt to circumvent the Open Door Law. And, again, our policy is to freely allow amendments to complaints in order to bring all matters at issue before the court. See Shuman, 370 N.E.2d at 948.

Finally, any alleged prejudice to Jasper was a direct result of Jasper's refusal to conduct the depositions in October, when HDC had first attempted to schedule them. Depositions typically reveal new information which, in turn, requires additional

14

discovery. Here, HDC was backed up against a wall when it filed its third motion to amend its complaint only two weeks before trial.

Again, leave to amend should be given unless the amendment will result in prejudice to the opposing party. Huff, 363 N.E.2d at 989. Here, Jasper cannot show that it would have been prejudiced by HDC's third amended complaint because Jasper's recalcitrance in complying with discovery requests, especially depositions, was the sole reason for the timing of the proposed amendment. We reverse the trial court's denial of HDC's third motion to amend its complaint.

### Motion to Continue Trial

Under the trial rules, a trial court shall grant a continuance upon motion and "a showing of good cause established by affidavit or other evidence." Ind. Trial Rule 53.5. A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its discretion. Gunashekar v. Grose, 915 N.E.2d 953, 955 (Ind. 2009). A denial of a motion for continuance is abuse of discretion only if the movant demonstrates good cause for granting it. Id.

Here, again, Jasper refused to permit depositions until December 6, after the trial court had ordered Jasper to comply with HDC's request for depositions. When HDC was finally able to conduct the depositions, less than two weeks remained until trial. In support of its motion to continue the trial, HDC stated that it was ready to take depositions the week of November 28, but that Jasper insisted the depositions be held December 6, 7, and 8. And HDC argued

15

4. That based upon information obtained from the December 6 and 7 depositions, Plaintiffs have filed simultaneously with this motion, additional discovery requests, interrogatories and a motion to compel discovery with which Plaintiffs believe the Defendants have not complied.

Based upon Defendants' initial discovery delay in this matter, the additional discovery required because of the depositions and Defendants' continuing objection to what Plaintiffs believe [are] legitimate discovery requests, Plaintiffs are requesting additional time to prepare for the trial in this matter.

5. Further, based upon information obtained from the depositions, issues have been presented for the first time that are now the subject of Plaintiffs' third request to file an amended complaint which is also filed simultaneously herewith.

Appellants' App. at 152-53. Accordingly, HDC requested a continuance of the trial date for at least thirty days to prepare for trial.

We acknowledge Jasper's contention that the trial court was obligated to advance the trial on the calendar pursuant to Indiana Code Section 5-14-1.5-7 and that under Trial Rule 57 "[t]he court may order a speedy hearing of an action for a declaratory judgment and may advance it on the calendar." But, here, the four-and-a-half-month time period from the date the complaint was filed to the date of trial was unreasonable given Jasper's deliberate failure to agree to depositions until December, and then only after court intervention.[7] Jasper has not shown how it would have been prejudiced by a thirty-day continuance, especially considering Mayor Schmitt's testimony that there was no "official deadline" for finalizing the lease agreement with Twisted Oak. Transcript at 138. And the prejudice to HDC in denying the motion to continue is obvious in light of the abbreviated discovery schedule. We hold that the trial court abused its discretion

---

[7] Our research has not revealed any cases involving the Open Door Law where the time between the filing of the complaint and trial was so abbreviated.

16

when it denied HDC's motion to continue trial. We reverse and remand for a new trial, to be held after sufficient time for additional discovery has been granted HDC.

## Motion to Compel Discovery

Finally, because we reverse and remand for a new trial, we instruct the trial court to grant HDC's second motion to compel discovery.

## Conclusion

In sum, HDC has demonstrated that it was diligent in pursuing discovery, but was thwarted for months by Jasper's refusal to cooperate. Less than two weeks prior to trial, HDC obtained information in the course of depositions that suggested possible Open Door Law violations by the volunteer group. The trial court abused its discretion when it denied HDC's third motion to amend its complaint, filed only four months after its initial complaint and while discovery was ongoing. Jasper cannot complain about either the timing of the third amended complaint or the motion to continue trial because Jasper refused to schedule depositions until the eleventh hour, less than two weeks prior to trial. The trial court abused its discretion when it denied HDC's motion to continue the trial. We reverse and remand with instructions that the trial court: (1) grant HDC's third motion to amend its complaint; (2) grant HDC an additional thirty days to conduct new discovery, including but not limited to depositions; (3) grant HDC's second motion to compel discovery; and (4) schedule a new trial to be held no less than thirty days after the close of discovery.

Reversed and remanded for further proceedings.

KIRSCH, J., and MAY, J., concur.