

FILED

May 31 2016, 8:27 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Frederick L. Carpenter
Daniel L. Freeland & Associates, P.C.
Highland, Indiana

ATTORNEYS FOR APPELLEE

John W. Mervilde
Rick D. Meils
Meils Thompson Dietz & Berish
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Edward Rusnak and Rebecca
Rusnak,

*Appellants – Third Party Plaintiffs,*

v.

Brent Wagner Architects,

*Appellee-Third Party Defendant.*

May 31, 2016

Court of Appeals Case No.
64A03-1510-PL-1741

Appeal from the Porter Superior
Court

The Honorable William E. Alexa,
Judge

Trial Court Cause No.
64D02-1311-PL-10182

**Robb, Judge.**

# Case Summary and Issues

[1]     In 2006, Edward and Rebecca Rusnak contracted with Brent Wagner

Architects ("BWA") for the design of a home to be constructed on a lot they

had recently purchased. Alan R. Sommers Construction Company

("Sommers"), as general contractor, constructed the home between 2008 and 2010. This litigation commenced in 2013 when Sommers sued, seeking to enforce the Rusnaks' obligation to pay for the home.[1] The Rusnaks filed a third party complaint against BWA for breach of contract. BWA filed a motion for summary judgment; shortly after the motion was fully briefed and set for hearing, the Rusnaks filed a motion to amend their third party complaint to add an additional cause of action against BWA. The Rusnaks appeal the trial court's orders on those motions, raising the following issues for our review: 1) whether the trial court erred in granting summary judgment to BWA, and 2) whether the trial court erred in denying their motion to amend the third party complaint. Concluding the trial court erred in granting summary judgment to BWA and abused its discretion in denying the Rusnaks' motion to amend, we reverse and remand.

## Facts and Procedural History

[2]     In May 2006, the Rusnaks entered into a Lot Purchase Agreement with 400 North, LLC ("400 North") for the purchase of a lot in the Pepper Creek subdivision in Valparaiso. In September 2006, the Rusnaks entered into a contract for BWA to design the home they planned to build in Pepper Creek. The contract documents signed by the parties include "AIA Document B155

---

[1] The trial court granted summary judgment to Sommers on its complaint seeking to recover on a promissory note signed by the Rusnaks. *See* Appellants' Appendix at 336-38. The Rusnaks do not appeal this order and Sommers is not a party to this appeal.

Standard Form of Agreement Between Owner and Architect for a Small Project," which identifies the following responsibilities of the architect for the project:

> The Architect shall provide architectural services for the project, including normal structural, mechanical and electrical design services. Services shall be performed in a manner consistent with professional skill and care.
>
> * * *
>
> 1.2 During the Construction Phase, if requested by Owner, the Architect shall act as the Owner's representative and provide administration of the Contract between the Owner and Contractor. The extent of the Architect's authority and responsibility during construction is described in this Agreement and in AIA Document A205, General Conditions of the Contract for Construction of a Small Project. *Unless otherwise agreed, the Architect's services during construction include visiting the site, reviewing and certifying payments, reviewing the Contractor's submittals, rejecting nonconforming Work, and interpreting the Contract Documents.*

Appellants' App. at 163-64 (emphasis added). "AIA Document A205 General Conditions of the Contract for Construction of a Small Project," further describes the architect's administration of the contract:

> 4.1 The Architect will provide administration of the Contract as described in the Contract Documents. The Architect will have authority to act on behalf of the Owner only to the extent provided in the Contract Documents.

4.2 The Architect will visit the site at intervals appropriate to the stage of construction to become generally familiar with the progress and quality of the Work.

4.3 The Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely the Contractor's responsibility. The Architect will not be responsible for the Contractor's failure to carry out the Work in accordance with the Contract documents.

4.4 Based on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor.

4.5 The Architect will have authority to reject Work that does not conform to the Contract Documents.

*Id.* at 168. "Work" is defined as "the construction and services required by the Contract Documents, and includes all other labor, materials, equipment and services provided by the Contractor to fulfill the Contractor's obligation." *Id.* at 167. Document A205 also describes the contractor's responsibilities, including:

3.3.1 The Contractor shall supervise and direct the Work, using the Contractor's best skill and attention. The Contractor shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures, and for coordinating all portions of the Work.

*Id.* at 168. Ultimately, the Rusnaks selected Sommers as their contractor and executed a promissory note to Sommers in the amount of $376,448.44. The home was built from 2008 to 2010.

[3] On November 12, 2013, Sommers filed a lawsuit against the Rusnaks, alleging breach of contract and unjust enrichment for their failure to pay the promissory note in full. The Rusnaks filed their answer, affirmative defenses, and counterclaim against Sommers, and also filed a third party complaint against BWA.[2] The Rusnaks asserted a claim for breach of contract against BWA, alleging that, as architect of the project, BWA "owed a duty to [the Rusnaks] to properly design and supervise the construction project" and "breached this duty by allowing the construction conduct to fall below the applicable standard of care," causing injury and damages to the Rusnaks. *Id.* at 42.

[4] During discovery, the Rusnaks' answers to interrogatories propounded by BWA explained their theory of liability against BWA:

> As the Architect overseeing the project, [BWA] had a duty to perform certain functions and services on behalf of [the Rusnaks], including but not limited to the general oversight of the construction project and all work being performed at the site. [BWA] failed to perform those duties to a reasonable standard of care which led to the foreseeable damages of substandard practices which resulted in many defective conditions on various areas of the Home, many of which are quite substantial but none

---

[2] The Rusnaks' third party complaint also asserted claims for breach of contract and breach of the implied warranty of habitability against 400 North. 400 North is not a party to this appeal.

of which are acceptable. We had numerous meetings [with BWA] discussing the many corrections that needed to be made as the residence was under construction . . . .

*Id.* at 201. Their answers also set forth a litany of work they allege did not conform to the contract documents in the construction of their home, including, but not limited to:

Poor drywall finish; miss-cuts on wood trim; wood trim damaged by other work on the home and installation of later added wood trim; poor finish on surfaces; roof leaks; standby power back-up wiring issues; other electrical issues; gas line leaks; sewer back-ups; plumbing issues, such as missing drains and missing line feeds; incorrect water reverse osmosis equipment installed is not as agreed or specified; poor concrete installation and incorrect stairs at front entrance.

*Id.* at 202.

[5] The Rusnaks propounded the following interrogatories to BWA:

8. Did you perform any on-site services at the Property? If so, provide the dates you visited the Property to perform services, a description of the services performed, and the portions of the construction you observed.

Answer: [BWA] objects to this interrogatory as vague, ambiguous, overly broad and unduly burdensome. However, without waiving said objection, and subject thereto, [BWA] performed site observation pursuant to the contract.

9. Did you observe any deviation from the intended design on the Property? If so, provide the nature of the deviation and the

date you observed it, whether you reported any deviation from the intended design and to whom you reported the deviation, as well as the date you made the report, and whether any corrective actions were taken with respect to any observed deviation?

Answer: [BWA] objects to this interrogatory as overly broad and unduly burdensome. However, without waiving said objection, and subject thereto, yes. The front step layout.

*Id.* at 223. With regard to the front steps, the Rusnaks' interrogatory answers stated:

The concrete work at the front entrance is defected [sic]. [BWA] was supposed to be checking the pouring of the stairs and other flat work. The stair mold framing did not extend far enough to the left by approximately three inches. [BWA] contacted [Sommers] regarding this and [Sommers] arrived at the jobsite and after reviewing it told [BWA] that it was too late to change for the cement trucks were already on their way so they needed to deal with it.

*Id.* at 203.

[6] On February 4, 2015, BWA filed a motion for summary judgment, arguing the Rusnaks "seek to hold BWA liable for the alleged acts and omissions of Sommers and its contractors in the construction of the home" but the AIA documents that comprise the contract and govern the relationship between BWA and the Rusnaks "make clear that BWA cannot be held liable for any alleged defects or mistakes by Sommers or its contractors." *Id.* at 151. On April 24, 2015, the Rusnaks responded to the motion for summary judgment, opposing the motion on the ground that BWA agreed to act as their

representative during the construction phase and despite having the authority and duty to reject nonconforming work, failed to do so: "[BWA's] actions and inactions in failing to reject the nonconforming Work is a genuine issue of material fact that must be decided by the trier of fact in this matter." *Id.* at 173. The interrogatory answers set forth above were among the evidence designated by the parties. A hearing on the motion for summary judgment was scheduled for May 27, 2015.

[7] On May 20, 2015, the Rusnaks filed a Motion for Leave to File Amended Complaint, alleging that through discovery, they had "uncovered additional information that provides a basis to assert a claim against [BWA] for defective design in the creation of the construction drawings, diagrams and blueprints." *Id.* at 240. Specifically, they alleged a design defect with respect to overloading of the foundation. The Rusnaks' motion noted that no discovery deadlines had been established, they had not previously amended their pleadings, and asserted BWA would not be prejudiced by the amendment.

[8] On May 27, 2015, the trial court held the scheduled hearing on BWA's motion for summary judgment. The trial court took the matter under advisement. On June 1, 2015, BWA filed a response to the Rusnaks' motion to amend their complaint, asserting the motion "is untimely and prejudicial, and will be moot if the Court grants BWA's motion for summary judgment." *Id.* at 247.

On July 9, 2015, the trial court entered an order on both pending motions. The trial court denied the motion to amend without further comment. With respect to BWA's motion for summary judgment, the trial court stated:

> 9. The Contract entered into between these parties is not ambiguous.
>
> 10. [BWA] performed all of its duties and obligations that were owed to [the Rusnaks] under the terms and conditions of the Contract entered into between these two parties.
>
> 11. There remain no genuine issues of material fact and entry of Summary Judgment is warranted in this cause.

*Id.* at 281. Because the summary judgment for BWA did not dispose of all claims against all parties involved in the litigation, BWA moved for entry of final judgment pursuant to Indiana Trial Rule 54(B). The trial court granted BWA's motion on July 17, 2015, noting it had granted summary judgment to BWA on all claims against it, determining there was no just reason for delay, and expressly directing entry of final judgment for BWA.

The Rusnaks filed a motion to correct error with respect to both the grant of summary judgment to BWA and the denial of leave to amend their complaint. After a hearing, the trial court entered the following order:

> The Court originally granted BWA's Motion for Summary Judgment as there was no material fact in dispute and BWA was entitled to judgment as a matter of law. The Court reviewed the relevant documents and found that BWA preformed [sic] all the duties listed to BWA in the contract between [the Rusnaks] and

BWA. As there was no issue of material fact and BWA was entitled to judgment as a matter of law, the Court was proper in granting Summary Judgment in favor of BWA.

The Court also originally denied [the Rusnaks'] Motion for Leave to Amend Complaint. . . . While there was no showing of bad faith, dilatory motive on the part of the amending party, [or] failure to cure deficiencies by previous amendments, the Court did find that it would prejudice the adverse party. It would have been prejudicial to allow [the Rusnaks] to amend the very same complaint because the Motion [for Summary Judgment] had already been fully briefed and was merely awaiting a hearing. Therefore the Court's denial of [the Rusnaks'] Motion for Leave to Amend was proper due to the prejudice it would cause BWA.

*Id.* at 330. The trial court denied the motion to correct error, and this appeal ensued.

# Discussion and Decision

## I. Summary Judgment

### A. Standard of Review

[11] The party moving for summary judgment must "affirmatively negate an opponent's claim" by demonstrating that the designated evidence raises no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014) (internal quotation marks and citation omitted); *see also* Ind. Trial Rule 56(C). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence

establishing the existence of a genuine issue of material fact in order to preclude summary judgment. *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012).

[12] We review an order granting summary judgment de novo, which is the same standard of review applied by the trial court. *Hughley*, 15 N.E.3d at 1003. When the trial court has granted summary judgment to the moving party, the nonmoving party has the burden on appeal of persuading us that the grant of summary judgment was in error. *Id.* However, "we carefully assess the trial court's decision to ensure that [the nonmoving party] was not improperly denied his day in court." *Id.* (citation omitted). In reviewing the record, we consider only the evidentiary matter the parties have designated to the trial court, *see* T.R. 56(C), (H), and we construe all reasonable inferences in favor of the nonmoving party, *Hughley*, 15 N.E.3d at 1003. "A fact is 'material' if its resolution would affect the outcome of the case, and an issue is 'genuine' if a trier of fact is required to resolve the parties' differing accounts of the truth, or if the undisputed material facts support conflicting reasonable inferences." *Id.* (quoting *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009)).

[13] Indiana's heightened summary judgment standard "consciously errs on the side of letting marginal cases proceed to trial on the merits, rather than risk short-circuiting meritorious claims." *Id.* at 1004.

## B. Genuine Issue of Material Fact

[14] This appeal requires the interpretation and construction of a contract, which are questions of law. *John M. Abbott, LLC v. Lake City Bank*, 14 N.E.3d 53, 56 (Ind. Ct. App. 2014). As such, cases involving contract interpretation are particularly appropriate for summary judgment. *Id.* And because the interpretation of a contract presents a question of law, it is reviewed de novo by this court. *Jenkins v. S. Bend Cmty. Sch. Corp.*, 982 N.E.2d 343, 347 (Ind. Ct. App. 2013), *trans. denied*. We review the contract as a whole, attempting to ascertain the parties' intent and making every attempt to construe the language of the contract "so as not to render any words, phrases, or terms ineffective or meaningless." *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 501 (Ind. Ct. App. 2007). If a contract's terms are clear and unambiguous, we give those terms their plain and ordinary meaning. *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 251 (Ind. 2005). When the terms of a contract are ambiguous or uncertain, however, and its interpretation requires extrinsic evidence, its construction is left to the factfinder. *Johnson v. Johnson*, 920 N.E.2d 253, 256 (Ind. 2010). Any ambiguity in the contract is construed against the drafter. *MPACT Constr. Grp., LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 910 (Ind. 2004). A contract is ambiguous if reasonable people would disagree as to the meaning of its terms. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002).

[15] When summary judgment is granted based on the construction of a written contract, the trial court has either determined as a matter of law that the contract is not ambiguous or uncertain, or that any contract ambiguity can be

resolved without the aid of a factual determination. *Cmty. Anesthesia & Pain Treatment, L.L.C. v. St. Mary Med. Ctr. Inc.*, 26 N.E.3d 70, 77 (Ind. Ct. App. 2015), *trans. denied*. Though we are not bound by the trial court's findings on a summary judgment ruling, they do aid our review by providing a statement of the reasons for the trial court's action. *See id*. at 76. Here, the trial court specifically noted in its order granting summary judgment to BWA that the contract was not ambiguous and BWA performed all its duties and obligations under the contract. Based on the contract documents themselves and the designated evidence, we disagree.

[16] The contract documents between the Rusnaks and BWA provide that during construction, BWA will visit the construction site to become familiar with the progress and quality of the contractor's work—that is, the construction and services required by the contract documents—and has the authority to reject non-conforming work on behalf of the owners. *See* Appellants' App. at 164 (Document B155, article 1.2) and 168 (Document A205, article 4). The designated evidence includes many examples of Sommers' work the Rusnaks claim do not conform to the contract. Edward Rusnak avers in his designated affidavit that the Rusnaks brought multiple non-conformities to BWA's attention, but BWA failed to address them with Sommers or reject any of the work. The designated evidence also includes an admission by BWA that it observed at least one non-conformity. Although BWA itself does not indicate that it brought that non-conformity to Sommers' attention or otherwise took action regarding the non-conforming work, the Rusnaks' answers to

interrogatories indicate BWA *did* approach Sommers about the problem, and when told it was too late to fix the problem, did nothing further.

[17] Focusing on the exculpatory clause in Document A205, BWA argues it "cannot be held liable for the alleged failure of Sommers to use the proper means, methods, techniques, or procedures in executing its own contractual obligations." Brief of Appellee at 11. The Rusnaks "agree wholeheartedly" that BWA is not responsible for the "shoddy construction work performed by Sommers." Appellants' Brief at 15. But they assert—and we agree—that the clause relieving BWA of liability for the contractor's *performance* of the work does not excuse BWA from meeting its own obligation to *reject* work it knows fails to conform to the contract documents, plans, and specifications. If the exculpatory clause were interpreted to mean that BWA cannot be held accountable for failing to reject non-conforming work because the work itself is the province of the contractor, then BWA's clearly stated responsibility to reject non-conforming work is essentially meaningless. We will not construe a contract such that a term is meaningless when it is possible to do otherwise. *See Storch v. Provision Living, LLC*, 47 N.E.3d 1270, 1273 (Ind. Ct. App. 2015).

[18] Because the designated evidence shows BWA observed at least one item of non-conforming work, the question is what does the contract term "reject non-conforming Work" mean? The Rusnaks' answers to interrogatories indicate BWA did address with Sommers the front steps—when they were still just framed—and Sommers said "they needed to deal with it" because the cement trucks were already on the way and it was too late to do anything about it.

Appellants' App. at 203. The steps were poured as they were wrongly framed. "Reject" is defined as "to refuse to accept, consider, submit to, take for some purpose, or use." Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/reject (lasted visited May 26, 2016). Reasonably intelligent people could differ in the meaning they would give to BWA's responsibility to reject non-conforming work. One might believe simply bringing the problem to Sommers' attention and leaving the means, methods, techniques, or procedures of resolving the non-conformity to Sommers constituted rejecting or refusing to accept the work on the Rusnaks' behalf. Another might interpret the term to mean BWA should have taken some affirmative action to assure the problem was corrected, or declined to certify payment for that element of the work if it was not. *See* Appellants' App. at 164 (stating the architect's responsibilities during construction include reviewing and certifying payments); *see also id.* at 168 (stating that "[b]ased on the Architect's observations and evaluations of the Contractor's Applications for Payment, the Architect will review and certify the amounts due the Contractor").[3]

---

[3] We have focused here on just the one non-conformity BWA admits it observed, and the Rusnaks concede the contract may not impose a duty on BWA to seek out and find other non-conforming work. *See* Appellants' Br. at 15. However, the designated evidence demonstrates the Rusnaks pointed out many other non-conformities to BWA as construction progressed, so there is also a question about whether BWA should have rejected—however that term is construed—any of the other non-conforming work of which it was given notice.

There is a reasonable question about what the term "reject" as used in the contract documents means, and that uncertainty should be addressed by the factfinder. *See Johnson*, 920 N.E.2d at 256. Moreover, there is a question of fact at least as to whether BWA's actions in the face of a known non-conformity in the work met its contractual obligation to reject non-conforming work on the Rusnaks' behalf. Construing the designated evidence and reasonable inferences in the Rusnaks' favor and applying Indiana's heightened summary judgment standard, we conclude the trial court erred in granting summary judgment to BWA.

## II. Motion to Amend

### A. Standard of Review

Trial Rule 15(A) provides that a party "may amend his pleading once as a matter of course" if within a certain time frame. "Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be given when justice so requires." T.R. 15(A). Amendments to pleadings are to be liberally allowed, but the trial court retains broad discretion to grant or deny motions to amend pleadings. *Hilliard v. Jacobs*, 927 N.E.2d 393, 398 (Ind. Ct. App. 2010), *trans. denied*. We will only reverse upon an abuse of that discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or when the trial court has misinterpreted the law. *Id.* We judge an abuse of discretion by evaluating several factors, including "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiency by

amendment previously allowed, undue prejudice to the opposing party by virtue of the amendment, and futility of the amendment." *Id.* (citation omitted).

## B. Prejudice to BWA

[21] The trial court explained in its order on the Rusnaks' motion to correct error that there was no evidence of bad faith, dilatory motive, or previous failure to cure deficiencies by the Rusnaks. Nonetheless, because the parties had already fully briefed BWA's motion for summary judgment and the trial court had scheduled a hearing on the matter before the Rusnaks filed their motion to amend, the trial court concluded granting the Rusnaks' motion would prejudice BWA. Yet, the trial court further noted:

> In the order granting Summary Judgment in favor of BWA, the Court only granted the Motion in regard to . . . the count of Breach of Contract. As no other issues have been litigated, res judicata does not apply to the desired count in the [Rusnaks'] proposed amended complaint. The Court denied the [Rusnaks'] Motion for Leave to Amend Complaint not because the claim was without merit, but due to the prejudice it would cause BWA to allow the amended complaint to go forward. As the matter has not been heard before a court, [the Rusnaks] are free to pursue this complaint, just not in conjunction with the current pending claims associated with this cause number.

Appellants' App. at 330-31. In short, it appears the trial court denied the Rusnaks' motion to amend their complaint to add a second count because it was simultaneously granting BWA's motion for summary judgment on the initial—and at that time, only—count.

[22] The Rusnaks filed their third party complaint against BWA on January 8, 2014, alleging that BWA "owed a duty to [the Rusnaks] to properly design and supervise the construction project [and BWA] breached this duty by allowing the construction conduct to fall below the applicable standard of care." *Id.* at 42. The parties engaged in discovery throughout 2014, during which the Rusnaks elaborated in their interrogatory answers on their theory of BWA's liability, focusing solely on BWA's obligations during the construction phase. BWA filed its motion for summary judgment on February 4, 2015, and the Rusnaks made a request in mid-February 2015 for a higher resolution copy of certain architectural drawings previously supplied in discovery. They also asked for an extension of time to file their summary judgment response. After receiving the drawings from BWA in mid-March, the Rusnaks made a second request in early April for an extension of time to respond to the summary judgment motion and noted they were going to have an engineer review the drawings. The Rusnaks filed their summary judgment response on April 22, 2015, addressed only to their claim BWA breached the contract during the construction phase, and one month later, filed their motion for leave to amend their complaint to add a count of breach of contract for design defects.

[23] "The stated policy of this court and our Supreme Court is to freely allow such amendments in order to bring all matters at issue before the court." *Kreilein v. Common Council of City of Jasper*, 980 N.E.2d 352, 358 (Ind. Ct. App. 2012). Leave to amend should be granted unless the amendment will result in prejudice to the opposing party. *Id.* In *Hilliard*, we held the trial court did not

abuse its discretion in denying the plaintiff's motion for leave to file a third amended complaint in part because of prejudice to the opposing party. 927 N.E.2d at 401. The motion to amend was filed three years after the original complaint, the claims to be added could have been raised in the original complaint and there was no convincing explanation for why they had not been, and the plaintiff sought leave to amend only after it was apparent the initial claims would fail. *Id.* at 400; *see also Crawford v. City of Muncie*, 655 N.E.2d 614, 623 (Ind. Ct. App. 1995) (holding the trial court did not abuse its discretion by denying leave to amend the complaint because the defendant would be prejudiced where the plaintiff moved to amend six years after filing the initial complaint and only after the defendant filed a motion to dismiss), *trans. denied*.

[24] Here, the Rusnaks filed their first and only motion to amend approximately eighteen months after the original complaint was filed. The statute of limitations had not yet run, no discovery deadlines or trial dates had been set in the existing litigation, and summary judgment on the initial claim, while fully briefed, had not yet been decided. The Rusnaks asserted they had only just recently discovered a basis for a design defect claim such that the claim could not have been brought in the original complaint.[4] BWA's hope that it could "terminate [its] involvement in this litigation" through its motion for summary judgment is insufficient to show prejudice in allowing a potentially viable,

---

[4] The original complaint did note BWA's duty to properly design the project but nothing thereafter—until the motion to amend—indicated they were pursuing a claim based on that duty or had any evidence to support such a claim.

timely claim to be added. Br. of Appellees at 18; *see State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 193, 370 N.E.2d 941, 948 (1977) ("Claims of incurring the burden of further discovery, preparation and expense do not constitute a showing of prejudice . . . ."). In fact, the trial court's suggestion that the Rusnaks would be able to file a completely independent action asserting the design defect claim would seem to cause more prejudice to BWA than allowing a new claim to be added in the already existing litigation by requiring it to engage in piecemeal litigation, which is disfavored. We therefore conclude the trial court abused its discretion in denying the Rusnaks' motion to amend their complaint.

## Conclusion

There are issues for the factfinder regarding the nature of BWA's obligations under the contract and whether it met them; therefore, summary judgment for BWA was improper at this stage. The trial court abused its discretion in denying the Rusnaks' motion to amend their complaint to add an additional claim because no prejudice will result to BWA. The judgment of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

Barnes, J., and Altice, J., concur.